784 P.2d 723

**Donald Gardner FOULKE, Petitioner,**

v.

**The Honorable Theodore KNUCK, a Judge Pro Tempore for the Superior Court of the State of Arizona, County of Pima, Respondent,**

**and**

**Mary E. ELLINGSEN, Real Party in Interest.**

**No. 2 CA–SA 89–0142.**

Court of Appeals of Arizona, Division 2, Department A.

Dec. 15, 1989.

Robert L. Barrasso, Tucson, for petitioner.

Ann M. Haralambie, P.C. by Ann M. Haralambie, Tucson, for real party in interest.

## OPINION

ROLL, Presiding Judge.

Petitioner Donald Gardner Foulke (Foulke) seeks special action relief from the denial of his motion for disqualification of counsel for real party in interest Mary E. Ellingsen (Ellingsen) in the underlying marital dissolution action. Because we conclude that the respondent judge abused his discretion and because petitioner has no equally plain, speedy and adequate remedy by appeal, we accept jurisdiction and grant special action relief. Ariz.R.P.Spec. Actions 1 and 3, 17B A.R.S.; *see also Alexander v. Superior Court*, 141 Ariz. 157, 685 P.2d 1309 (1984); *Sellers v. Superior Court*, 154 Ariz. 281, 742 P.2d 292 (App. 1987).

## FACTS

On March 16, 1989, Foulke, a licensed attorney in this state, met with Tucson attorney Ann Haralambie. In his special action petition, Foulke alleges that in this meeting he was seeking Haralambie's professional advice and counsel concerning matters in the upcoming divorce between himself and his wife, Mary E. Ellingsen, and that an attorney-client relationship was established between him and Haralambie. Ellingsen admits only that Foulke had an initial consultation with Haralambie concerning issues of stepparent rights and responsibilities with respect to Ellingsen's child. Although Ellingsen admits Foulke paid Haralambie for her services, she denies that an attorney-client relationship existed between the two. Foulke claims that during the meeting with Haralambie, he divulged certain confidences and secrets, specifically recalling that he commented during their meeting that there was an attorney-client privilege with regard to their discussion. Ellingsen disputes this, contending that the only information Foulke gave to Haralambie was the names of the parties, the fact that he began living with Ellingsen prior to the child's birth, and that the child had no relationship with the natural father. Ellingsen claims these facts are now matters of record and were not privileged when Ellingsen subsequently retained Haralambie.

## PROCEDURAL BACKGROUND

On March 29, 1989, Ellingsen, through her attorney Stefani Gabroy, filed a petition for dissolution of her marriage to Foulke. It appears that on October 4, 1989, Ellingsen met with Haralambie. The following day, Foulke learned that Haralambie intended to substitute as counsel for Ellingsen, and through his counsel he requested that Haralambie withdraw from her representation of Ellingsen based upon a conflict of interest. Apparently, when Haralambie initially met with Ellingsen, she was unaware that Ellingsen's husband was Foulke. On October 12, 1989, Haralambie notified Foulke's counsel that she did not intend to withdraw. In its October 13, 1989 minute entry, the respondent judge overruled Foulke's objection to Haralambie's representation of Ellingsen, stating that he was "not convinced that there is any real detriment to [Foulke] or any real advantage to [Ellingsen]." Foulke filed a motion to disqualify Haralambie on October 16, 1989. At a hearing on October 23, 1989, Foulke avowed to the court that confidences had been divulged to Haralambie. The respondent judge, however, refused to reconsider the decision not to disqualify Haralambie and denied Foulke's motion. This special action followed.

## ISSUES

The general question raised by this special action is whether the respondent judge abused his discretion in denying Foulke's motion to disqualify Haralambie. In answering this question, we address the following issues: (1) whether Haralambie's representation of Ellingsen violates Ethical Rule 1.9 (ER 1.9) of the Arizona Rules of Professional Conduct, Ariz.S.Ct.R. 42, 17A A.R.S.; (2) if the representation is an ethical violation, is disqualification appropriate; and (3) may disqualification under ER 1.9(a) be avoided either by Foulke's alleged failure to establish specific harm resulting from the conflict or by hardship which Ellingsen claims she will suffer if Haralambie is disqualified.

## CONFLICT OF INTEREST

ER 1.9(a), the provision through which Foulke clearly sought Haralambie's disqualification, provides as follows:

Conflict of Interest: Former Client

A lawyer who has formerly represented a client in a matter shall not thereafter:

(a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation;

■ In determining whether a conflict exists, we must first determine whether Foulke is Haralambie's former client. The existence of an attorney-client relationship "is proved by showing that the party sought and received advice and assistance from the attorney in matters pertinent to the legal profession." *Matter of Petrie*, 154 Ariz. 295, 299, 742 P.2d 796, 800 (1987). The test is a subjective one; the court looks to such things as the nature of the services rendered, the circumstances under which the individual divulges confidences, *Alexander v. Superior Court*, 141 Ariz. 157, 162, 685 P.2d 1309, 1314 (1984), and "[t]he client's belief that he is consulting a lawyer in that capacity and his manifested intention to seek professional legal advice." C. McCormick, Law of Evidence § 88 at 208 (3d ed. 1984); *see also Petrie*, 154 Ariz. at 300, 742 P.2d at 801; *Alexander*, 141 Ariz. at 162, 685 P.2d at 1314.[1] Although it is not necessary for the individual to pay the attorney a fee for the services rendered in order for the relationship to be established, *Petrie*, 154 Ariz. at 299, 742 P.2d at 800, we believe that where payment for legal services has been made it is persuasive evidence that an attorney-client relationship was established. The fact that a consulta-

tion is relatively brief does not negate the establishment of an attorney-client relationship. *See* Arizona Ethics Opinion 74–10.

■ Although Ellingsen admits that Foulke paid Haralambie for the March consultation, she argues that Foulke never retained Haralambie's services, and that the provision of legal information under the facts of this case did not constitute the formation of an attorney-client relationship. Ellingsen's own argument belies her conclusion that the relationship was not established. If, in fact, all Foulke received from Haralambie was "legal information" as opposed, presumably, to legal advice, it is a distinction without a difference. Whether one seeks legal information or legal advice from an attorney, the attorney is being consulted for his or her professional, legal expertise. The fact that Foulke paid her for that information after a one-hour consultation only reinforces the conclusion that the relationship was established.

Ellingsen suggests that because Foulke is an attorney, the consultation was nothing more than a sharing of legal information, implying that this is somehow distinguishable from discussions between attorneys and their non-lawyer clients. This notion is untenable. It is immaterial that Foulke is licensed to practice law in this state. Based upon the record before us, it is clear that the consultation was personal in nature, that Foulke was seeking, at the very least, legal information on matters pertaining to him, not to a client of his. We find that Foulke is Haralambie's former client as contemplated by ER 1.9.

■ Our second inquiry in determining if a conflict exists under ER 1.9(a) is whether, in representing Ellingsen in the underlying dissolution action, Haralambie is representing someone in the same or a substantially related matter whose interests are materi-

---

1. *Alexander* was decided based upon the Arizona Code of Professional Responsibility which, effective February 1, 1985, was replaced by the Rules of Professional Responsibility, this state's adoption of the Model Rules of Professional Conduct of the American Bar Association. Ariz. St.Ct.R. 42, 17A A.R.S. We find, however, that *Alexander* and other pre-rules decisions continue to be good law with regard to the evaluation

of questions of ethics because much of the principles of the code and certainly its spirit have been encompassed by the rules. *See generally* Preamble and Scope to Rules of Professional Conduct, Ariz.S.Ct.R. 42, 17A A.R.S.; Code Comparison, ER 1.9, Ariz.S.Ct.R. 42, 17A A.R.S. *Alexander* is particularly instructive because of its discussion of Model Rule ER 1.9, the very same rule that is before us.

ally adverse to Foulke's interests. Although Foulke claims that the consultation focused on his rights in light of the anticipated dissolution proceeding, Ellingsen contends that it concerned his legal rights and responsibilities as a stepparent. She argues that the dissolution proceeding had not yet been filed and that the issues relevant to that litigation are entirely different, citing, by way of example, allegations of child molestation. Ellingsen admits that Foulke discussed the fact that he began living with Ellingsen before the child's birth and that the child had no relationship with the natural father. Even based on Haralambie's characterization of the consultation, the general subject matter is substantially related to the issues which must necessarily be resolved in the dissolution action. Further, it is self-evident that Ellingsen's interests in the dissolution proceeding are materially adverse to Foulke's. We conclude, therefore, that Haralambie's representation of Ellingsen in the underlying proceeding presents a conflict of interest under ER 1.9(a).

In arguing that a conflict does not exist under ER 1.9, Ellingsen raises additional arguments related to the nature of the communication which appear to be directed to ER 1.9(b). We need not address these arguments, however, as it is clear that Foulke's motion to disqualify Haralambie was based upon ER 1.9(a) as opposed to the use of information obtained from a prior client to that client's disadvantage, under ER 1.9(b). Moreover, having determined that a conflict exists under ER 1.9(a), we need not consider whether one exists under ER 1.9(b).

## DISQUALIFICATION UNDER ER 1.9(a)

A. Disqualification is appropriate.

■ Ellingsen argues that Foulke has failed to establish a sufficient basis for requiring Haralambie to withdraw, and relies upon the following Comment to ER 1.7 which is referred to in the Comment to ER 1.9:

Resolving questions of conflict of interest is primarily the responsibility of the lawyer undertaking the representation.

In litigation, a court may raise the question when there is reason to infer that the lawyer has neglected the responsibility.... Where the conflict is such as clearly to call in question the fair or efficient administration of justice, opposing counsel may properly raise the question. Such an objection should be viewed with caution, however, for it can be misused as a technique of harassment.

Heeding the admonition expressed in the Comment and recognizing that "whenever possible the courts should endeavor to reach a solution that is least burdensome upon the client or clients," *Alexander*, 141 Ariz. at 161, 685 P.2d at 1313; *see also Sellers v. Superior Court, supra,* we find that disqualification is the only appropriate resolution here in light of the blatant violation of ER 1.9(a). We reach this conclusion based on the fact that the motion was brought by counsel for the former client with whom there is a direct conflict and the rule's absolute prohibition against such representation. As such, the conflict in the case before us is distinguishable from the conflict in *Sellers, supra.* In *Sellers*, opposing counsel sought to disqualify an attorney, representing multiple defendants, after a conflict arose between one defendant and the attorney, resulting in the attorney's withdrawal from representation of that one defendant. 154 Ariz. at 282, 742 P.2d at 293. Unlike the present case, where the conflict directly involves Foulke, the conflicts in *Sellers* did not pertain to the opposing party who sought the disqualification. We believe that under the circumstances of this case, disqualification, as opposed to directing the issue to the appropriate disciplinary board as Ellingsen suggests, is necessary to promote the "fair or efficient administration of justice."

We find no support in the record before us for Ellingsen's contention that the conflict has been raised for purposes of harassment. Specifically, we find no support for Ellingsen's charge that, because of Haralambie's expertise, Foulke arranged the consultation with Haralambie as a calculated maneuver to disqualify her from representing Ellingsen.

**B. Disqualification cannot be avoided.**

Ellingsen's argument in this regard is interwoven with her more general argument that this matter is simply not one in which disqualification is appropriate, discussed above. For purposes of clarity, however, we address this argument separately.

Ellingsen appears to contend that disqualification is not necessary because (1) no confidences or secrets were divulged, except perhaps those which are now a matter of public record and no longer privileged, and therefore no "true conflict" exists, (2) Foulke has shown no harm resulting from representation of Ellingsen by Haralambie notwithstanding his consultation with Haralambie, and (3) disqualification of Haralambie would result in hardship to Ellingsen.

■ Ellingsen's first contention fails to recognize the mandatory nature of ER 1.9(a). The rule does not require that confidences and secrets be divulged in order for a conflict to exist or for disqualification to be proper. *State v. Allen*, 539 So.2d 1232, 1234–35 (La.1989); *see also Arkansas v. Dean Foods Products Co.*, 605 F.2d 380, 383 (8th Cir.1979); *United States v. Kitchin*, 592 F.2d 900, 904 (5th Cir.), *cert. denied*, 444 U.S. 843, 100 S.Ct. 86, 62 L.Ed.2d 56 (1979). Regardless of what was communicated during the representation of the former client, the rule prohibits subsequent representation of an individual whose interests are substantially adverse to those of the former client. In *T.C. Theatre Corp. v. Warner Brothers Pictures, Inc.*, 113 F.Supp. 265, 268–69 (S.D.N.Y.1953),[2] the court stated:

> [T]he former client need show no more than that the matters embraced within the pending suit wherein his former attorney appears on behalf of his adversary are substantially related to the matters or cause of action wherein the attorney previously represented him, the former client. The Court will assume that

during the course of the former representation confidences were disclosed to the attorney bearing on the subject matter of the representation. It will not inquire into their nature and extent. Only in this manner can the lawyer's duty of absolute fidelity be enforced and the spirit of the rule relating to privileged communications be maintained.

*See also Arkansas v. Dean Foods, supra; Cord v. Smith*, 338 F.2d 516, 524–25 (9th Cir.1964); *Matter of Evans*, 113 Ariz. 458, 462, 556 P.2d 792, 796 (1976).

The "shall not" of ER 1.9(a) "incorporates the *T.C. Theatre* presumption of receipt of confidential information; the attorney is not given the option of showing that there is no danger of misuse of confidential information because he never received any." *Subsequent Representation and the Model Rules of Professional Conduct: An Evaluation of Rules 1.9 and 1.10*, 1984 Ariz.State L.J. 161, 180–81.

■ Ellingsen contends and the respondent judge clearly agreed that disqualification may be avoided for the reason that Foulke failed to establish that he has suffered or will suffer harm as a result of the consultation with Haralambie. She argues that no confidences and secrets were disclosed and that any which were disclosed are now matters of public record. As to the first point, we have already determined that this is irrelevant. Second, the mere fact that such confidences may have become public record over Foulke's objection does not change their character. Mere litigation does not change the fact that he divulged confidences which he continues to seek to protect. Ellingsen bolsters her argument with the unsupported contention that during a discussion involving Foulke's prior counsel, Haralambie and the court, counsel was unable to state what harm had or would result from Haralambie's representation of Ellingsen. She then cites *Gomez v. Superior Court*, 149 Ariz. 223, 717 P.2d 902 (1986) for the proposition that

---

**2.** *T.C. Theatre* is the seminal case in the area of former client representation. As the *Alexander* court noted, the substantially related test of *T.C. Theatre* was codified in Rule 1.9 of American

Bar Association Model Rules of Professional Conduct adopted by the House of Delegatees on August 2, 1983. *Alexander*, 141 Ariz. at 164, 685 P.2d at 1316.

under the new ethical rules disqualification by court order requires some actual detriment and is not to be ordered *ipso facto.*

Reliance upon *Gomez* is misplaced. *Gomez* applies to those cases where disqualification is sought based upon the appearance of impropriety, a principle previously set forth in Canon 9 of the Code of Professional Responsibility, although still a viable ethical principle. The *Gomez* court stated:

It would appear, however, that "appearance of impropriety," however weakened by case law and its omission in the new Rules of Professional Conduct, survives as a part of conflict of interest and an appearance of impropriety should be enough to cause an attorney to closely scrutinize his conduct. It does not necessarily follow that it must disqualify him in every case. Where the conflict is so remote that there is insufficient appearance of wrongdoing, disqualification is not required.

*Id.* at 225, 717 P.2d at 904 (citations omitted).

The blatant violation of ER 1.9(a) that exists before us presents a conflict that is anything but remote. As recognized in *In re Ethics Opinion 74–28*, 111 Ariz. 519, 522, 533 P.2d 1154, 1157 (1975) (Cameron, J., concurring), while there is concern for the appearance of impropriety, "it is actual unethical conduct which is our primary concern." The representation of an individual in a divorce proceeding against a former client who sought legal information on substantially related matters is contrary to the clear terms of an ethical rule and is actual unethical conduct. While it may be necessary to establish harm where disqualification is based upon nothing more than the appearance of impropriety and although we will consider the least burdensome solution in resolving this problem, *Alexander,* 141 Ariz. at 161, 685 P.2d at 1313, we do not believe specific harm must be established to justify disqualification where there has been a violation of ER 1.9(a).

Because of the mandatory nature of ER 1.9(a), the presumption that confidences have been divulged, the nature of Foulke's consultation, and Foulke's vigorous opposi-

tion to Haralambie's representation of Ellingson, we believe Foulke has sufficiently established that the denial of Haralambie's disqualification is burdensome and harmful to Foulke and the integrity of the profession. We do not believe that any more harm than this need be shown. "Disqualification is an ethical, not a legal matter," *Dean Foods,* 605 F.2d at 384, and does not require a showing that confidences have been divulged. *State v. Allen,* 539 So.2d at 1235. To require Foulke to show more would place former clients in a "Catch–22," requiring that they divulge the very same confidences and secrets which they seek to protect, disclosure of which is, in part, the reason for the discomfort of having a prior attorney represent an adversary.

■ We also find Ellingsen's final contention to be without merit. To avoid disqualification because of hardship to the new client, the burden must far outweigh the injustice to the former client who requested the disqualification. We find that Ellingsen is unable to meet this difficult test. Ellingsen claims that because of Haralambie's expertise in the area of domestic relations and, in particular, cases involving allegations of sexual abuse, she will suffer great hardship if her counsel is disqualified. She argues that there are few, if any, attorneys with Haralambie's expertise in the Tucson area. In addition, she claims she will suffer financially because of the expense of services already provided by Haralambie.

Ellingsen's claims are not sufficient to justify Haralambie's continued representation of her. Immediately after Haralambie met with Ellingsen and as soon as Foulke learned of Haralambie's intention to substitute as Ellingsen's counsel, his counsel notified Haralambie of Foulke's adamant opposition. This is not a situation where disqualification is sought after months or years of representation in a complicated litigation. It appears that the majority of Haralambie's work has involved the issue now before us. If indeed the dissolution action has progressed, Haralambie continued to render legal services after she and her client were fully aware that the appro-

priateness of the representation was being contested. Both counsel and client proceeded at their own risk. As for Ellingsen's claim that Haralambie's expertise is so specialized that other competent counsel in the Tucson area would be difficult to find, it is not sufficient to avoid Haralambie's disqualification.

### CONCLUSION

We conclude that Haralambie's representation of Ellingsen violates ER 1.9(a). Under the circumstances of this case, the trial court abused its discretion in denying Foulke's motion seeking Haralambie's disqualification. We therefore grant special action relief, vacate the trial court's order and remand for further proceedings consistent with this opinion.

HATHAWAY and HOWARD, JJ., concur.