The defendants, Curtis Roberts, M.D., and Roger D. Eiland, M.D., appeal from the trial court's order denying their motion to disqualify the law firm of Pittman, Hooks, Marsh, Dutton, 
Hollis, P.C. ("Pitman, Hooks"), from representing the plaintiff, Sharon Hutchins, as administratrix of the estate of Freeman Hutchins, Jr., in her wrongful death medical malpractice suit against the defendants.[1] We reverse and remand.
Pittman, Hooks presently represents the plaintiff. The law firm of Starnes Atchison represents the defendants. Ralph Bohannon, a lawyer and a certified registered nurse anesthetist, while an associate at Starnes Atchison, had full access to the defendants' file, and he was engaged in an array of activities in connection with this suit, ranging from legal research; the review of depositions; the examination of potential witnesses, including medical experts; and the planning of trial strategy. Bohannon billed the defendants for more than 30 hours of work in the preparation of the defense to the plaintiffs suit. Bohannon then resigned from Starnes 
Atchison and became an associate at Pittman, Hooks. Approximately nine months later, the defendants moved to have Pittman, Hooks disqualified from representing the plaintiff.[2] The trial court entered an order disqualifying Bohannon, the propriety of which is not at issue; however, based on affidavits submitted by the lawyers in Pittman, Hooks, it found that Bohannon had not divulged any of the confidential information he had obtained during his employment with Starnes Atchison and that Pittman, Hooks had taken sufficient steps to screen Bohannon from any participation in the plaintiff's suit. In denying the defendants' motion, the trial court ordered Pittman, Hooks to continue its policy of isolating Bohannon from the case.
Relying primarily on Ex parte America's First Credit Union,519 So.2d 1325 (Ala. 1988) and Ex parte Taylor Coal Co., Inc.,401 So.2d 1 (Ala. 1981), the defendants contend that Pittman, Hooks should have been disqualified because of Mr. Bohannon's previous involvement as counsel for the defendants. We agree.
Disciplinary Rule 5-101(C), Code of Professional Responsibility of the Alabama State Bar ("the Code"), prohibits a lawyer from representing "a party to a cause or his successor after having previously represented an adverse party or interest in connection therewith." Definition (7) of the *Page 1233 
Code states: "Unless the context otherwise requires, wherever in these Rules the conduct of a lawyer is prohibited, all lawyers associated with him are also prohibited." Under Canon 9 of the Code, a lawyer is required to conduct himself so as to avoid even the appearance of professional impropriety. Ethical Consideration 9-1 states:
 "Continuation of the American concept that we are to be governed by rules of law requires that the people have faith that justice can be obtained through our legal system. A lawyer should promote public confidence in our system and in the legal profession."
In Ex parte America's First Credit Union, supra, this Court adopted the "common sense" approach to questions concerning the vicarious disqualification of lawyers that had previously been adopted by the Court of Criminal Appeals in Terry v. State,424 So.2d 710 (Ala.Crim.App. 1982). Under the "common sense" approach, the Code is not so strictly interpreted as to always require the disqualification of an entire law firm when one of the lawyers in that firm is disqualified. However, noting that the office of the general counsel and the Disciplinary Commission of the Alabama State Bar had also adopted the "common sense" approach, see 45 Ala. Law. 306 (1984), this Court in Ex parte America's First Credit Union, supra, stated as follows:
 "In an unpublished opinion of the Alabama State Bar Disciplinary Commission, 81-557, a similar situation was addressed. A lawyer at a large firm concentrating in defense work was moving to a firm concentrating in plaintiff's work. He questioned under what circumstances he and the new firm would be disqualified. The Disciplinary Commission said:
 " 'Neither you nor any member or associate of the [new] firm . . . may continue to represent any party in a matter in which you participated or were familiar with while an associate of the [old] firm. . . . The members and associates of the [new] firm . . . may continue representation in pending cases in which you did not participate and as to which you acquired no knowledge while an associate of [the old firm], but you personally may not take part in any matters wherein the two firms heretofore represented opposing interests.
 " 'We do not feel that your leaving the [old] firm . . . and becoming an associate of the [new] firm would necessarily require the latter firm to withdraw from all cases wherein [the old firm] represents adverse parties. To uncompromisingly apply the rule would require us to base a presumption upon a presumption. In other words, we would have to presume that you acquired all of the knowledge possessed by every member and associate of the [old] firm (a fact which we know to be untrue). Then we would have to assume that this knowledge (which you do not possess) would be irrebuttably imputed to every member and associate of the [new] firm (a fact which we know to be untrue).
 " 'In order to avoid even the appearance of impropriety we do not feel that you personally should take part in the handling of any cases for . . . [the new firm] where the [old] firm represented an adverse party while you were an associate of the firm.
 " 'True, the test applied by a court in determining whether or not to grant a motion to require an attorney to withdraw from a case may not be the same test that would be applied by [the] Disciplinary Commission in determining whether or not disciplinary sanctions should be imposed, nevertheless, we feel that the above-cited authorities are persuasive and, thus, we apply the Rules on "vicarious disqualifications," with the above described limitations.' "
519 So.2d at 1327-28. (Emphasis added.) The Court went on to state that it found the Disciplinary Commission's reasoning persuasive, and held that the trial court did not err when it refused to disqualify the law firm of Clark, Dean Copeland, which represented Frederick Barkley in a malicious prosecution suit against America's *Page 1234 
First Credit Union, because Lloyd Copeland, a partner in the firm, who had previously worked in the Mobile County district attorney's office when a theft of property charge against Barkley had been nolprossed, " 'did not play any active part in the prosecution of [Barkley] or the decision to terminate that prosecution.' " 519 So.2d at 1328.
We note that the "common sense" approach adopted by this Court in Ex parte America's First Credit Union has been carried forward into the new Alabama Rules of Professional Conduct, which will become effective January 1, 1991. See Rule 1.10 ("Imputed Disqualification: General Rule") and the comment thereto.[3]
Finally, we are mindful that there will inevitably be some hardship suffered by the plaintiff in retaining new counsel. However, we can see no reason why the combined cooperation of the newly retained counsel, Pittman, Hooks, and the trial court cannot serve to minimize that hardship, so that this litigation can proceed with the parties', and the public's, confidence in the lawyers and the legal system intact.
For the foregoing reasons, the trial court's order denying the defendants' motion to disqualify Pittman, Hooks is reversed, and the case is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HORNSBY, C.J., and MADDOX, JONES, ALMON, SHORES, ADAMS and STEAGALL, JJ., concur.
[1] The defendants' request to appeal this interlocutory order was granted pursuant to Rule 5, A.R.App.P.
[2] The plaintiff acknowledges in her brief that she has no reason to believe that the filing of the motion was intentionally delayed so as to allow the defendants to gain an unfair tactical advantage in the event the motion was granted.
[3] We have fully considered the plaintiffs argument concerning the applicability of the so called "Chinese wall" defense, which is recognized in some jurisdictions and which was recognized by the trial court as a basis upon which to avoid the vicarious disqualification of Pitman, Hooks. The term "Chinese wall" refers to any set of physical and procedural barriers intended to prevent one member of an organization, such as a law firm, from being exposed to information relating to a matter currently or formerly handled by one of his colleagues. See, generally, Comment, The Chinese Wall Defenseto Law-Firm Disqualification, 128 U.Pa.L.Rev. 677 (1980); Casenote, Screening Mechanisms: A Rebuttal to VicariousDisqualification, 15 Ohio N.U.L.Rev. 717 (1988); Commentary,Rebuttable Presumptions and Intra-Firm Screening: The NewSeventh Circuit Approach to Vicarious Disqualification ofLitigation Counsel, 59 Notre Dame L.Rev. 399 (1984); Annot.,Sufficiency of Screening Measures (Chinese Wall) Designed toPrevent Disqualification of Law Firm, Member of Which isDisqualified for Conflict of Interest, 68 A.L.R.Fed. 687 (1984); Annot., Propriety of Law Firm's Representation ofClient in Federal Court Where Lawyer Affiliated With Firm isDisqualified from Representing Client, 51 A.L.R.Fed. 678 (1981). However, this defense is not available under the Code, and it will be available under the new Alabama Rules of Professional Conduct only in certain cases involving the movement of lawyers between the government and private law firms. See Rule 1.11 ("Successive Government and Private Employment") and the comment thereto. The new Alabama Rules of Professional Conduct were adopted from the Model Rules of Professional Conduct of the American Bar Association. It was not the intent of the A.B.A., nor was it the intent of this Court in adopting the new rules, for the "Chinese wall" defense to be available in cases involving the movement of lawyers between private law firms. See Note, Attorneys: VicariousDisqualification and the Model Rules of Professional Conduct, 40 Okla.L.Rev. 231 (1987).