Thomas G. GREEN, IV, Plaintiff,

v.

MONTGOMERY COUNTY, ALABAMA,
et al., Defendants.

Civ. A. No. 91–T–315–N.

United States District Court,
M.D. Alabama, N.D.

Jan. 27, 1992.

Thomas G. Green, pro se.

Boyett Bros. Inc., pro se.

### ORDER

MYRON H. THOMPSON, Chief Judge.

In this lawsuit brought pursuant to 42 U.S.C.A. § 1983, plaintiff Thomas G. Green, IV, charges that the defendants "redeemed" his property in violation of the fourth, fifth, and fourteenth amendments to the United States Constitution. One of the defendants, Boyett Brothers, Inc., is represented in this lawsuit by the law firm of Beasley, Wilson, Allen, Mendelsohn & James and, more specifically, by one of its members, Blaine C. Stevens. This cause is before the court on the motion by Green for disqualification of the law firm. Green contends that the law firm should be disqualified for two reasons. First, Green claims that, more than seven years ago, in 1983 and 1984, one of the law firm's other members, Kenneth J. Mendelsohn, represented him in two cases. Mendelsohn was then an associate and is now a partner in the law firm. Second, Green claims that, a few months before filing this lawsuit, he discussed its facts with Mendelsohn. Green contends, based on these contacts with Mendelsohn, that the new Alabama Rules of Professional Conduct for attorneys require the court to disqualify Mendelsohn's law firm from representing Boy-

ett Brothers in this case.[1] For the reasons that follow, the court will grant the motion and disqualify the law firm.[2]

### I.

It "is beyond dispute that lawyers are officers of the court and that the courts have the inherent authority to regulate their professional conduct." *In re Gopman*, 531 F.2d 262, 266 (5th Cir.1976). The minimum ethical obligations for lawyers practicing in this court are contained in Rule 1(a)(4) of the Local Rules of the United States District Court for the Middle District of Alabama.[3] This local rule provides that:

"Any attorney who is admitted to the bar of this court or who appears in this court ... shall be deemed to be familiar with and governed by ... the ethical limitations and requirements governing the behavior of members of the Alabama State Bar, and, to the extent not inconsistent with the preceding, the American Bar Association Model Rules of Professional Conduct."

These local rules represent controlling obligations on attorneys appearing in this court. *Cox v. American Cast Iron Pipe Co.*, 847 F.2d 725, 728 n. 4 (11th Cir.1988); *Waters v. Kemp*, 845 F.2d 260, 263 (11th Cir.1988).

■ The court turns first to Green's contention that Mendelsohn's prior representation of him in 1983 and 1984 should disqualify Mendelsohn's law firm from representing Boyett Brothers in this lawsuit.[4] Rule

---

1. The court has relied on the Alabama Rules of Professional Conduct as reproduced in the Alabama Rules of Court—State, pp. 1053–49 (West 1991).

2. Admittedly, a conflict of interest raised by a former client who is now an opposing party "should be viewed with caution ... for it can be misused as a technique of harassment." Comment to Rule 1.7 of the Alabama Rules of Professional Conduct. However, "the only person likely to know and care about the breach of confidentiality" from a prior representation "is the former client." Developments in the Law—Conflicts of Interest in the Legal Profession, 94 Harv.L.Rev. 1244, 1324–25 (1981). The court is convinced not only that Green asserts a conflict serious enough "clearly to call in question the fair or efficient administration of justice," Com-

ment to Rule 1.7, but also that he raises it in good faith.

3. The Local Rules of the United States District Court for the Middle District of Alabama are reproduced in the Alabama Rules of Court—Federal, pp. 221–51 (West 1991).

4. Because some of the acts in question took place before the Alabama Rules of Professional Conduct replaced the Alabama Code of Professional Responsibility on January 1, 1991, it is not self-evident whether the Alabama Rules or the prior Alabama Code should apply to the ethical question under analysis. However, because the complaint in this case was filed on March 21, 1991, after the Alabama Rules became effective, the court assumes that Mendel-

1.9 of the new Alabama Rules of Professional Conduct governs the relations between an attorney and a former client. It places two separate restrictions on attorneys. Part (a) provides that "A lawyer who has formerly represented a client in a matter shall not thereafter ... represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client, unless the former client consents after consultation." Part (b) provides that, with certain exceptions not relevant here, such a lawyer "shall not thereafter ... use information relating to the representation to the disadvantage of the former client." *See also Church of Scientology of California v. McLean,* 615 F.2d 691, 692 (5th Cir.1980) ("A lawyer need not disqualify himself in a matter concerning a former client unless the terminated employment had some substantial relationship to the pending suit or unless he has received some privileged information").

Rule 1.10(a) governs the "vicarious disqualification" of a law firm when one of its lawyers is disqualified. It provides that, "While lawyers are associated in a firm, none of them shall knowingly represent a client when any of them practicing alone would be prohibited from doing so by Rule[] ... 1.9." Rule 1.10(a) is based on the idea that "a firm of lawyers is essentially one lawyer for the purposes of the rules governing loyalty to the client, or from the premise that each lawyer is vicariously bound by the obligation of loyalty owed by each lawyer with whom he is associated." Comment to Rule 1.10. The rule is "entirely prophylactic: It is designed to prevent behavior not because the behavior is intrinsically improper but because it involves a· *risk* of impropriety." Developments in the Law—Conflicts of Interest in the Legal Profession, 94 Harv. L.Rev. 1244, 1369 (1981) (emphasis in original).

■ Part (a) of Rule 1.9 is generally a codification of the standard articulated in the landmark case of *T.C. Theatre Corp. v. Warner Brothers Pictures,* 113 F.Supp. 265 (S.D.N.Y.1953). *T.C. Theatre* holds that a client may disqualify his former attorney from representing his present adversary if the client can show "that the matters embraced within the pending suit wherein his former attorney appears on behalf of his adversary are substantially related to the matters or cause of action wherein the attorney previously represented him." *Id.* at 269.[5] Under Rule 1.9(a) and *T.C. Theatre,* therefore, a party may obtain disqualification of the opposing counsel if he can show that (1) he had an attorney-client relationship with the attorney sought to be disqualified (2) in a substantially related matter.

---

sohn's firm did not accept employment with Boyett Brothers in this matter until after that time. (Mendelsohn's law firm first appeared in this lawsuit by filing a motion to dismiss on April 8, 1991.) The court thus further assumes that the ethical conflict, if any, arose after Mendelsohn's law firm began representing Boyett Brothers in this lawsuit. Moreover, all parties have relied exclusively on the Alabama Rules, and not the Alabama Code, in making their arguments on the disqualification issue. The court will therefore apply the Alabama Rules of Professional Conduct.

5. The rule of *T.C. Theatre* prevails, although often with modifications, in the majority of state and federal courts. Developments in the Law—Conflicts of Interest in the Legal Profession, 94 Harv.L.Rev at 1317–18; Perschbacher & Perschbacher, Enter at Your Own Risk: The Initial Consultation & Conflicts of Interest, 3 Geo.J.Legal Ethics 689, 707 & n. 66 (1990). The Eleventh Circuit Court of Appeals has relied on

*T.C. Theatre. Cox,* 847 F.2d at 728; *Duncan v. Merrill Lynch, Pierce, Fenner & Smith,* 646 F.2d 1020, 1028 (5th Cir. Unit B 1981), *cert. denied,* 454 U.S. 895, 102 S.Ct. 394, 70 L.Ed.2d 211 (1981); *United States v. Kitchin,* 592 F.2d 900, 904 (5th Cir.) (per curiam), *cert. denied,* 444 U.S. 843, 100 S.Ct. 86, 62 L.Ed.2d 56 (1979); *Brennan's Inc. v. Brennan's Restaurants, Inc.,* 590 F.2d 168, 171 (5th Cir.1979); *Wilson P. Abraham Construction Corp. v. Armco Steel Corp.,* 559 F.2d 250, 252 (5th Cir.1977) (per curiam); *In re Yarn Processing Patent Validity Litigation,* 530 F.2d 83, 89 (5th Cir.1976); *American Can Co. v. Citrus Feed Co.,* 436 F.2d 1125, 1128 (5th Cir. 1971). Cf. *In re Corrugated Container Antitrust Litigation,* 659 F.2d 1341, 1347 (5th Cir. Unit A 1981); *United States v. Trafficante,* 328 F.2d 117, 120 (5th Cir.1964). The Alabama Supreme Court has also applied *T.C. Theatre. Goldthwaite v. Disciplinary Board,* 408 So.2d 504, 509 (Ala.1982); *Ex parte Taylor Coal Co.,* 401 So.2d 1, 6 (Ala.1981).

If the former client succeeds in making this dual showing, he will be entitled to an irrebuttable presumption that "during the course of the former representation confidences were disclosed to the attorney bearing on the subject matter of the representation." *T.C. Theatre,* 113 F.Supp. at 269. The court will not inquire into whether the former client in fact made confidential disclosures to the attorney or whether the attorney is "in fact likely to use the damaging disclosures to the detriment of his former client." *Wilson P. Abraham Construction Corp. v. Armco Steel Corp.,* 559 F.2d 250, 252 (5th Cir.1977); *see also In re Yarn Processing Patent Validity Litigation,* 530 F.2d 83, 89 (5th Cir.1976). The rationale for this irrebuttable presumption is that, "If the court were to probe further into the question of whether the attorney actually gained access to confidential information, the inquiry itself might destroy the values sought to be protected" by the attorney's duty of confidentiality. Developments in the Law—Conflicts of Interest in the Legal Profession, 94 Harv.L.Rev. 1244, 1329 (1981). *See also In re Corrugated Container Antitrust Litigation,* 659 F.2d 1341, 1347 (5th Cir. Unit A 1981); *T.C. Theatre,* 113 F.Supp. at 269; *Foulke v. Knuck,* 162 Ariz. 517, 784 P.2d 723, 729 (Ct.App.1989). The proof of a prior attorney-client relationship in a substantially related matter also entitles the former client to a "presumption that any confidences given to the attorney were shared among the attorney's partners and employees associated with the attorney at the time." *In re Yarn Processing Patent Validity Litigation,* 530 F.2d at 89.[6]

Green contends that he has met the requirements of Rule 1.9(a) and *T.C. Theatre.* The court cannot agree. Although Green and Mendelsohn had an attorney-client relationship with respect to certain matters in 1983 and 1984, Green concedes that these earlier matters are unrelated to his present lawsuit.

■ This conclusion does not end the court's inquiry, however. The court must still determine whether Rule 1.9(b) of the Alabama Rules of Professional Conduct applies. As stated, Rule 1.9(b) provides, with certain exceptions not relevant here, that "A lawyer who has formerly represented a client in a matter shall not thereafter … use information relating to the representation to the disadvantage of the former client." Therefore, if, in the course of the prior relationship, Green divulged to Mendelsohn confidential information which could be used to Green's disadvantage in this lawsuit, Mendelsohn could still be disqualified. Green has not convinced the court of such. Green contends that, during the course of the prior relationship, he provided Mendelsohn with information about his "financial and business affairs." Admittedly, any knowledge a party may have about an adversary, particularly about the adversary's financial resources, confers some marginal tactical advantage. However, given the vagueness with which Green has described the information conveyed to Mendelsohn and given the amount of time that has passed since it was conveyed, the court is convinced such information could not be used to Green's disadvantage in his present lawsuit. The court therefore concludes that Mendelsohn's representation of Green in 1983 and 1984 disqualifies neither Mendelsohn under Rule 1.9 nor Mendelsohn's law firm under Rule 1.10(a).

## II.

■ The court turns next to Green's charge that Mendelsohn and his law firm should be disqualified because, several months before filing this lawsuit, Green discussed the underlying facts with Mendelsohn in a telephone conversation. This time, the court agrees with Green that, under Rules 1.9 and 1.10 of the Alabama Rules of Professional Conduct, both Men-

---

**6.** *See also Kearns v. Fred Lavery Porsche Audi Co.,* 745 F.2d 600, 603 (Fed.Cir.1984), *cert. denied,* 469 U.S. 1192, 105 S.Ct. 967, 83 L.Ed.2d 971 (1985); *In re Corrugated Container Antitrust Litigation,* 659 F.2d at 1346; *Trone v. Smith,* 621 F.2d 994, 999 (9th Cir.1980); *Kitchin,* 592 F.2d at 904; *American Can Co.,* 436 F.2d at 1128–29; *Hughes v. Paine, Webber, Jackson & Curtis, Inc.,* 565 F.Supp. 663, 669, 671–73 (N.D.Ill.1983).

delsohn and his law firm must be disqualified from participating in this litigation.

Based on the evidence presented by the parties, the court finds the facts surrounding the telephone conversation to be as follows. Several months before filing this lawsuit, Green called Mendelsohn about the possibility of representing him. Although he did not discuss Boyett Brothers' involvement by name, he conveyed certain details and outlined the facts of his situation in general terms. Mendelsohn told Green that, based on the value of the property involved, the case did not appear to be worth filing. Green contacted Mendelsohn and believed he could be open and honest because Mendelsohn had represented him in earlier cases. Green had no idea that Mendelsohn's firm represented Boyett Brothers; indeed, up until the time Green filed this lawsuit, another law firm had represented Boyett Brothers in its dispute with him. As things turned out, however, Mendelsohn's law firm not only ended up representing Boyett Brothers against Green but, during the time frame that Green called Mendelsohn, Mendelsohn himself was representing Boyett Brothers in two other cases.

As stated, Rule 1.9(a) provides that "A lawyer who has formerly represented a client in a matter shall not thereafter ... represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client, unless the former client consents after consultation." *See also T.C. Theatre*, 113 F.Supp. at 269. Green has met Rule 1.9(a)'s "substantially related matter" requirement. Green discussed with Mendelsohn the same matter that Green's opposing party, Boyett Brothers, has retained Mendelsohn's law firm to dispute in this litigation. The more difficult question for the court is whether Green has satisfied Rule 1.9(a)'s "former client" requirement, that is, whether Green has established that he and Mendelsohn formed an attorney-client relationship during their telephone conversation.[7] This question implicates a small, but growing, body of law and commentary which has attempted to address the circumstances under which an initial consultation between a prospective client and an attorney could be viewed as having developed into an attorney-client relationship.

The emerging general rule is that "The fiduciary relationship existing between lawyer and client extends to preliminary consultation by a prospective client with a view to retention of the lawyer, although actual employment does not result." *Westinghouse Electric Corp. v. Kerr–McGee Corp.*, 580 F.2d 1311, 1319 (7th Cir.), *cert. denied*, 439 U.S. 955, 99 S.Ct. 353, 58 L.Ed.2d 346 (1978).[8] The mere existence of an express contract of employment, or the payment of legal fees, or the length of the consultation is not determinative of whether a preliminary consultation has matured into an attorney-client relationship. *Derrickson v. Derrickson*, 541 A.2d 149, 153 (D.C.1988); *Foulke v. Knuck*, 162 Ariz. 517, 784 P.2d 723, 726 (Ct.App.1989); *Herbes v. Graham*, 180 Ill. App.3d 692, 129 Ill.Dec. 480, 483–84, 536 N.E.2d 164, 167–68 (1989); *Hughes v. Paine, Webber, Jackson and Curtis*, 565 F.Supp. 663, 669–70 (N.D.Ill.1983). Rather, the test for determining the existence of this fiduciary relationship is a subjective one and "hinges upon the client's belief

---

**7.** The Alabama Rules of Professional Conduct offer little insight into how to determine whether contact between an attorney and a potential client has matured into an attorney-client relationship. *See* Scope to the Alabama Rules of Professional Conduct ("for purposes of determining the lawyer's authority and responsibility, principles of substantive law external to these rules determine whether a client-lawyer relationship exists.... Whether a client-lawyer relationship exists for any specific purpose can depend on the circumstances and may be a question of fact.")

**8.** *See also Kearns v. Fred Lavery Porsche Audi Co.*, 745 F.2d 600, 603 (Fed.Cir.1984) (same), *cert. denied*, 469 U.S. 1192, 105 S.Ct. 967, 83 L.Ed.2d 971 (1985). *See also* Perschbacher & Perschbacher, Enter at Your Own Risk: The Initial Consultation & Conflicts of Interest, 3 Geo.J.Legal Ethics 689, 702 (1990) ("Clearly the protection of the attorney-client relationship extends to those individuals who meet with an attorney with the intent to retain him or her").

that he is consulting a lawyer in that capacity and his manifested intention is to seek professional legal advice." *Westinghouse Electric Corp.*, 580 F.2d at 1319, *quoting* McCormick on Evidence § 88 (2d ed. 1972) at 179.[9] This subjective belief must, however, be a reasonable one. If, for example, the attorney has made it clear to the would-be client that there is no attorney-client relationship and if the evidence further reflects that the would-be client should have known that the relationship had not advanced to the point at which it could be deemed a representation, then there would be no attorney-client relationship despite the would-be client's subjective belief. Developments in the Law—Conflicts of Interest in the Legal Profession, 94 Harv.L.Rev. 1244, 1322-23 (1981).

There are two basic rationales for this rule. The first is that the lawyer is in the best position to develop mechanisms to avoid ethical dilemmas, that is, conflicts with potential as well as existing clients. He is the "repeat player," the one who will continually face this problem; he "set[s] the tone for an initial meeting or contact with an individual," Perschbacher & Perschbacher, Enter at Your Own Risk: The Initial Consultation & Conflicts of Interest, 3 Geo.J.Legal Ethics 689, 704-05 (Part II.B) (1990); he knows the ethical rules; and he has the legal background enabling him to anticipate the possible scenarios. *Id.* Therefore, because he "has the ability to avoid the impropriety, it is appropriate that consequences follow when a lawyer fails to exercise that ability—whether through ignorance, negligence, or deviousness."[10] *Id.*

It is clear that such mechanisms exist. For example, in the American Bar Association Formal Ethics Opinion No. 90-358 (1990), the following measures, among others, are suggested:

"1. Identify conflicts of interest before undertaking representation in any matter. Every lawyer 'should adopt reasonable procedures, appropriate for the size and type of firm and practice, to determine whether there are actual or potential conflicts of interest.' Rule 1.7, Comment. These procedures should be designed to identify any conflict at the earliest practicable point in discussions with a would-be client as to whether the lawyer may undertake the representation and before the representation is undertaken. These procedures should be followed in the case of all new matters, even where the lawyer previously has represented or is currently representing the client in other matters.

"2. Limit information from a would-be client to that which is necessary to check for conflicts. When obtaining the preliminary information before undertaking the representation, the lawyer should obtain from the would-be client only information sufficient to determine whether a conflict or potential conflict of interest

---

**9.** Applying this test, several courts have found that preliminary consultations created an attorney-client relationship or a fiduciary obligation on the part of the attorney. *See, e.g., Foulke v. Knuck,* 784 P.2d 723 (Ariz.App.1989); *Herbes v. Graham,* 180 Ill.App.3d 692, 129 Ill.Dec. 480, 536 N.E.2d 164 (1989); *Rose Ocko Foundation v. Liebovitz,* 155 A.D.2d 426, 547 N.Y.S.2d 89 (1989); *Seeley v. Seeley,* 129 A.D.2d 625, 514 N.Y.S.2d 110 (1987); *DeLoury v. DeLoury,* 22 Mass.App.Ct. 611, 495 N.E.2d 888 (1986); *Intercapital Corp. of Oregon v. Intercapital Corp. of Wash.,* 41 Wash.App. 9, 700 P.2d 1213, 1215 (1985); *Hughes v. Paine, Webber, Jackson and Curtis,* 565 F.Supp. 663, 669 (N.D.Ill.1983). Several other courts applying this test to preliminary consultations have found, on their facts, no attorney-client relationship. *See, e.g., Derrickson v. Derrickson,* 541 A.2d 149, 151 (D.C. 1988); *New York Univ. v. Simon,* 130 Misc.2d 1019, 498 N.Y.S.2d 659 (1985); *Mailer v. Mailer,* 390 Mass. 371, 455 N.E.2d 1211 (1983); *Nichols v. Village Voice, Inc.,* 99 Misc.2d 822, 417 N.Y.S.2d 415, 418 (1979). *See also* Perschbacher & Perschbacher, Enter at Your Own Risk: The Initial Consultation & Conflicts of Interest, 3 Geo.J.Legal Ethics 689, 702-03, nn. 49-52 (1990); Hazard, Preliminary Discussions with Clients, National Law Journal, Oct. 2, 1989 at 13-14, Oct. 30, 1989 at 13-14.

**10.** The lawyer here is in a position analogous to that of the "least-cost avoider" in tort law. He is in the best position to avoid, at the least cost to society, the potential harm which can arise due to conflicts between clients. *See* Calabresi, The Costs of Accidents: A Legal and Economic Analysis (1970) (arguing that the burden of a legal rule should be placed on the party who is in the best positioned and motivated to avoid the harm in the future).

exists and whether the new matter is one within the lawyer's capabilities and one in which the lawyer is willing to represent the would-be client. The would-be client should be cautioned at the outset of the initial conversation not to volunteer information pertaining to the matter until after the lawyer has had an opportunity to determine whether a conflict of interest exists and whether the lawyer is capable and willing to undertake the representation if the client elects to use the lawyer's services."

The Ethics Opinion further emphasizes that "These precautions may be of particular importance where the would-be client as to a new matter already is a client of the lawyer or firm on other matters, since such a client is likely to believe that the communication is with his or her lawyer." *See also* Hazard, Preliminary Discussions with Clients, National Law Journal, Oct. 2, 1989 at 13–14, Oct. 30, 1989 at 13–14; Perschbacher & Perschbacher, Enter at Your Own Risk: The Initial Consultation & Conflicts of Interest, 3 Geo.J.Legal Ethics 689, 704–05 & nn. 47, 57–58 (1990). Admittedly, there are no mechanisms which will avoid all conflicts in initial consultations; even with conflict-avoidance measures, lawyers may still find themselves confronted with conflicts which require their disqualification. However, this admission does not detract from the fact that such measures can significantly limit the frequency of such problems.

The second rationale is that, in the absence of protection of the confidentiality of initial consultations, "no person could safely consult an attorney for the first time."

*New York Univ. v. Simon,* 130 Misc.2d 1019, 498 N.Y.S.2d 659, 661 (1985), *quoting In re DuPonte's Estate,* 60 Cal.App.2d 276, 140 P.2d 866 (1943). A potential client can receive the best legal advice only if he fully discloses the facts underlying his legal difficulty, and this he will do only if he believes that his disclosures will be kept in confidence. Developments in the Law—Conflicts of Interest in the Legal Profession, 94 Harv.L.Rev. 1244, 1316 (1981).[11]

Applying the above *Westinghouse Electric Corp.* test to the facts of this case, the court concludes that Green's telephone consultation with Mendelsohn developed into an attorney-client relationship. Green consulted Mendelsohn with the intent of seeking legal advice about the possibility of bringing a lawsuit over the issues now before the court. Green went to Mendelsohn because he had employed him in the past. Moreover, because of this past confidential relationship between the two and because Mendelsohn did not employ any conflict-avoidance measures, such as telling Green to limit his comments to information necessary to check for conflicts, Green assumed that he could speak honestly, freely, and confidentially with Mendelsohn. Green therefore outlined the basic facts of the situation to Mendelsohn, and, relying on these confidences, Mendelsohn gave him a preliminary assessment that the lawsuit would probably not be worth bringing. Because Green had a "reasonable expectation" at the time of the telephone conversation that Mendelsohn would keep his disclosures confidential, *New York Univ. v. Simon,* 498 N.Y.S.2d at 661, Mendelsohn must be considered to have had a confiden-

---

**11.** This view of Rule 1.9(a) also better serves the interest reflected in Rule 1.6(a), which provides that "A lawyer shall not reveal information relating to representation of a client unless the client consents after consultation, except for disclosures that are impliedly authorized in order to carry out the representation." Rule 1.6 has been interpreted to "impose[ ] confidentiality on information relating to the representation even if it is acquired before or after the relationship existed." Comments to Rule 1.6. *See also* Scope to Alabama Rules of Professional Conduct ("there are some duties, such as that of confidentiality under Rule 1.6, that may attach when the lawyer agrees to consider whether a client-lawyer relationship shall be established"); Model Code Ethical Consideration 4–1 ("Both the fiduciary relationship existing between lawyer and client and the proper functioning of the legal system require the preservation by the lawyer of confidences and secrets of one who has employed or *sought to employ him*") (emphasis supplied); American Bar Association Formal Ethics Opinion No. 90–358 (1990) ("Model Rule 1.6 and DR 4–101 of the Model Code apply to protect information imparted by a would-be client seeking to engage the lawyer's services even though no legal services are performed and the representation is declined").

tial, fiduciary relationship with Green. Under Rule 1.9(a) of the Alabama Rules of Professional Conduct, therefore, Mendelsohn is disqualified from representing Green's litigation adversary, Boyett Brothers.

█ Mendelsohn's law firm contends that, even if Mendelsohn is disqualified by Rule 1.9(a), it does not necessarily follow that his law firm is also disqualified by Rule 1.10. The law firm bases its argument on two cases from the Alabama Supreme Court: *Roberts v. Hutchins*, 572 So.2d 1231 (Ala.1990), and *Ex parte America's First Credit Union*, 519 So.2d 1325 (Ala.1988). In these two cases, which precede the new Alabama Rules of Professional Conduct, the court followed a "common sense" approach to questions regarding vicarious disqualification, 572 So.2d at 1233; 519 So.2d at 1327; the court interpreted this approach to mean that the principle of vicarious disqualification should not be "so strictly interpreted as to always require the disqualification of an entire law firm when one of the lawyers in the firm is disqualified." 572 So.2d at 1233.

Rule 1.10 of the new Alabama Rules of Professional Conduct carries forward a similar approach. The rule is in parts and each part was drafted to address a different circumstance.[12] Part (a)—which provides that, "While lawyers are associated in a firm, none of them shall knowingly represent a client when any of them practicing alone would be prohibited from doing so by Rule[ ] . . . 1.9"—"operates only among the lawyers currently associated in a firm." Comment to Rule 1.10. Under this part, "a firm of lawyers is essentially one lawyer" and "each lawyer is vicariously bound by the obligation of loyalty owed by each lawyer with whom the lawyer is associated." *Id.* However, when a lawyer moves from one firm to another, other competing interest come into play and the situation is governed by Parts (b) and (c). The Comment to Rule 1.10 states that "it should be recognized that today many lawyers practice in firms, that many to some degree limit their practice to one field or another, and that many move from one association to another several times in their careers." "If the concept of imputed disqualification were defined with unqualified rigor," the Comment continues, "the result would be radical curtailment of the opportunity of lawyers to move from one practice setting to another and of the opportunity of clients to change counsel." Because of these differing circumstances, the Comment to Rule 1.10 suggests that the rule should be governed by a standard "based on functional analysis" rather than a "per se" approach.

Here, the court is not confronted with those special circumstances and concerns which attend when a lawyer moves from one law firm to another. Instead, in the scenario presented by Green, the conflict has arisen merely among lawyers in one firm. Moreover, the evidence reflects, and the court finds, that, if Mendelsohn and his law firm had used conflict-avoidance measures, such as the ones outlined above from the American Bar Association Formal Eth-

12. Rule 1.10 in its entirety provides as follows: "IMPUTED DISQUALIFICATION: GENERAL RULE
"(a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, 1.8(c), 1.9 or 2.2.
"(b) When a lawyer becomes associated with a firm, the firm may not knowingly represent a person in the same or a substantially related matter in which that lawyer, or a firm with which the lawyer was associated, had previously represented a client whose interests are materially adverse to that person and about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(b) that is material to the matter.

"(c) When a lawyer has terminated an association with a firm, the firm is not prohibited from thereafter representing a person with interests materially adverse to those of a client represented by the formerly associated lawyer, unless:
"(1) the matter is the same or substantially related to that in which the formerly associated lawyer represented the client; and
"(2) any lawyer remaining in the firm has information protected by Rules 1.6 and 1.9(b) that is material to the matter.
"(d) A disqualification prescribed by this rule may be waived by the affected client under the conditions stated in Rule 1.7."

ics Opinion No. 90–358 (1990), the problem would probably have been avoided. Presented with these circumstances and employing the functional analysis suggested in the Comment to Rule 1.10, the court concludes that Mendelsohn's law firm must be disqualified from representing Boyett Brothers in this lawsuit.

In making this decision, the court has been mindful that there are serious interests implicated on all sides of the disqualification issue. For the present client, Boyett Brothers, disqualification of its attorney impairs its right to choose freely its counsel and imposes on it the financial and logistical burden of replacing an attorney. In this case, however, such a burden is minimized by the fact that the disqualification motion was filed only two days after Mendelsohn's law firm first appeared in this litigation. With respect to Mendelsohn's law firm, an order of disqualification impairs its interest in representing a client and can, at least potentially, effect its professional reputation and its relationship with a long-standing client. However, weighing against these significant interests are not only the former client's—that is, Green's—right to have his confidences protected and the public's interest in the integrity of the judicial process, but also the compelling practical consideration that Mendelsohn and his law firm could have adopted, but did not, appropriate conflict-avoidance procedures which probably would have averted the problem. The court, therefore, concludes that the balance falls heavily in favor of disqualification.

The court would finally emphasize, however, that this conclusion does not imply that Mendelsohn or his law firm members have engaged in any improper behavior. The future import, if any, of the court's decision is that, if Mendelsohn and other lawyers are to avoid similar problems with similar consequences, they must adopt appropriate initial-consultation measures specifically tailored to limit those situations in which, as a result of information revealed by would-be clients, a lawyer or law firm must withdraw from or decline representation of another client.

For the foregoing reasons, it is ORDERED that plaintiff Thomas G. Green, IV's motion for an order of disqualification be and it is hereby granted and that the law firm of Beasley, Wilson, Allen, Mendelsohn & James be and it is hereby disqualified from representing defendant Boyett Brothers, Inc., in this lawsuit.