Robin L. MAYS, as Successor Administrator of the Estate of Mace David Howell, Jr., deceased and Kay C. Howell Plaintiffs

v.

**REASSURE AMERICA LIFE INSURANCE COMPANY** Defendant

No. 4:03CV00209 GH.

United States District Court, E.D. Arkansas, Western Division.

Nov. 7, 2003.

J.R. Buzbee, Esq., Attorney At Law, Little Rock, AR, for Plaintiffs.

Herbert C. Rule, Esq., Amy Lee Stewart, Esq., Byron Jansen, Esq., Rose Law Firm, Little Rock, AR, for defendant, Reassure America Life Insurance Company.

Carl Dwayne Plumlee, Esq., Attorney At Law, Salem, AR, for Bank of Salem, Objector.

## ORDER

GEORGE HOWARD, JR., District Judge.

Pending before the Court is plaintiff's motion for disqualification of defendant's counsel and defendant's expert witness. Plaintiff is the successor administrator of the Estate of Mace David Howell, Jr., deceased. She, along with Howell's former wife, Kay C. Howell, bring this action for a declaratory judgment seeking benefits of a $500,000.00 life insurance policy issued by defendant on the life of the decedent. The action was originally filed in state court on February 13, 2003 and was removed on March 21, 2003.

During the pendency of this litigation, the original administrator, Regions Bank, wished to resign. Boyce E. Hawk, attorney for the estate, contacted the certified public accounting firm of Engstrom, Grayson, Green & Patterson (the CPA Firm) about the possibility of one of its members serving as the successor administrator. Hawk met with the CPA Firm on March

20, 2003. Hawk prefaced the meeting with a statement that anything discussed during the meeting would be held in the strictest confidence and the CPA Firm assured Hawk that the conversation, which lasted about 60 to 90 minutes, would be confidential. Hawk contends that during the meeting with the CPA firm he discussed privileged and confidential information regarding the estate proceedings and conversations that he had with his client, the decedent, prior to Howell's death. In his affidavit, Hawk states that he discussed Howell's state of mind, financial statements, and Hawk's legal theories and conclusions. Two days after the meeting, the CPA Firm declined to serve as successor administrator.

On August 15, 2003, Hawk learned that Bruce Engstrom, a senior member of the CPA Firm, had been retained by Herbert Rule, counsel for defendant, to serve as an expert witness for defendant in this action. Furthermore, Engstrom spoke with Rule about the case. According to plaintiff, the attorney-client privilege between Hawk and decedent was preserved and binding on the members of the CPA Firm. Furthermore, plaintiff argues, the attorney's work product disclosures were confidential and should not have been disclosed by Engstrom to Rule. Thus, plaintiff contends that both Engstrom and Rule should be disqualified from participation in the case.

Defendant contends that plaintiff did not reveal anything confidential or privileged to defendant's expert. It has submitted the affidavit of Engstrom, who states that the primary focus of the March 20th meeting was a discussion about daily responsibilities the CPA Firm would have should it be appointed administrator as well as its compensation if one of the members accepted the appointment. Additionally, members of the CPA Firm discussed with Hawk some of the stories the media covered regarding Howell, in particular newspaper articles and television reports. Engstrom states that at no time during the meeting was there any discussion of conversations that Hawk had with Howell nor of any of his financial statements or his state of mind.

Engstrom states that in late July or early August, Rule contacted him to serve as an expert witness and consultant on matters pertaining to an analysis of the financial information of Howell and his business activities prior to his death as they relate to certain financial representations Howell made prior to his death. Engstrom states that he did not discuss with Rule any of the substance of discussions which took place at the March 20th meeting beyond that which had been previously reported by the media. Engstrom did inform Rule that he had previously discussed with Hawk the possibility of accepting an appointment as successor administrator of the estate. Engstrom avers that he is not aware of any ethical or professional obligations that would preclude or prohibit the CPA Firm or him from performing the professional services that Rule has requested.

■ Plaintiff initially contends that Engstrom should be disqualified based on the work-product privilege. As defendant notes, the work product privilege is not applicable in this instance. Defendant does not seek discovery of any material that could be considered work-product. *See Riley v. Dow Chem. Co.,* 123 F.R.D. 639, 640 (N.D.Cal.1989)(no basis to disqualify expert based on work product where no discovery sought of material arguably entitled to work product immunity).

■ Nothing in the Federal Rules limits the right of a party to call as its expert witness a person who might have been consulted by an opposing party. *Id., Procter & Gamble Co. v. Haugen,* 184 F.R.D. 410, 412–13 (D.Utah 1999) (no pro-

vision in Federal Rules providing for disqualification where expert has consulted with other side). "Federal courts have the inherent power to disqualify experts, although cases that grant disqualification are rare." *Koch Ref. Co. v. Jennifer L. Boudreaux MV*, 85 F.3d 1178, 1181 (5th Cir.1996) (citations omitted).

> Determination of whether disqualification of an expert on the ground of the expert's prior relationship with the party seeking disqualification requires that the court undertake the following inquiry:
>
> First, was it objectively reasonable for the first party who claims to have retained the [expert] to conclude that a confidential relationship existed?
>
> Second, was any confidential or privileged information disclosed by the first party to the [expert]?

*Mayer v. Dell*, 139 F.R.D. 1, 3 (D.D.C.,1991) (citations omitted). Many courts have also considered a third element: the public interest in allowing or not allowing an expert to testify. *Koch*, 85 F.3d at 1181. The burden is on the party seeking disqualification to establish these elements. *Id.*

■ The Court is not persuaded that it is *objectively reasonable* to conclude that a confidential relationship existed between the CPA Firm (or more specifically Engstrom) and plaintiff. They had a single meeting, the discussion generally concerned the CPA Firm's possible representation as an administrator of the estate. Hawk did not provide the CPA Firm specific facts about the case or confidential documents to review. They did not discuss critical litigation strategy. The Court must conclude that the single meeting amounted to no more than an inquiry as to whether someone in the CPA Firm could serve as successor administrator. *See Mayer*, 139 F.R.D. at 3

Furthermore, plaintiff makes only vague assertions that the CPA Firm received or had reasonable access to confidential information. In the 60 to 90 minute meeting, it is highly unlikely that there was any detailed or involved discussion concerning litigation strategies, the strengths and weaknesses of each side, the witnesses to be called, the types of experts to be retained and anticipated defenses, particularly as the discussion centered on the work of an administrator and the practicalities of the CPA Firm assuming that role. Additionally, as Engstrom notes, information concerning Howell's death and his business dealings was already a matter of media attention and therefore not confidential.

■ The balancing of competing policy objectives supports finding that disqualification is not warranted.

> The policy objectives favoring disqualification include preventing conflicts of interest and maintaining the integrity of the judicial process. The main policy objectives militating against disqualification are ensuring that parties have access to expert witnesses who possess specialized knowledge and allowing experts to pursue their professional calling. Courts have also expressed concern that if experts are too easily subjected to disqualification, unscrupulous attorneys and clients may attempt to create an inexpensive relationship with potentially harmful experts solely to keep them from the opposing party.

*English Feedlot, Inc. v. Norden Laboratories, Inc.* 833 F.Supp. 1498, 1504 –1505 (D.Colo.1993) (citations omitted)

■ Since no confidential information was conveyed to Engstrom by Hawk, or by Engstrom to Rule, the Court cannot find that there is a conflict of interest, or that the "integrity of judicial process [will] be jeopardized" by allowing defendant to retain Engstrom as an expert. *Id.* at 1505.

[A]bsent compelling equitable reasons to the contrary, any substantial ambiguity regarding whether there is a confidential relationship between an attorney and an expert should be resolved against the attorney seeking to invoke the relationship. First, lawyers are in the best position to development mechanisms to assure that both they and the expert have a clear and unambiguous understanding that a confidential relationship has been created. They are the "repeat players," the ones who will continually face the problem. Second, lawyers have the legal background and experience enabling them to anticipate possible problems in the future. They know the rules by which everyone must play. Therefore, because lawyers seeking to invoke the confidential relationship have the knowledge, experience, and the ability to avoid the conflict, it is appropriate that the consequences for failing to take the necessary precautionary measures should fall upon them. *See Wang Laboratories, Inc.*, 762 F. Supp. at 1248 ("Lawyers bear a burden to make clear to consultants that retention and a confidential relationship are desired and intended"); *cf. Green v. Montgomery County, Ala.*, 784 F.Supp. 841, 846 (M.D.Ala.1992) (similarly finding that lawyer is in best position to develop mechanisms to avoid ethical conflicts with potential as well as existing clients). *Wyatt By and Through Rawlins v. Hanan*, 871 F. Supp. 415, 420 –421 (M.D.Ala. 1994)

In sum, the Court finds that plaintiff has not met her burden of establishing that Engstrom and Rule should be disqualified.

Accordingly, the motion to disqualify expert witness and counsel is denied.