453 F.Supp.2d 1323 (2001)
In re: EMPLOYMENT DISCRIMINATION LITIGATION AGAINST THE STATE OF ALABAMA, et al.
Eugene Crum, Jr., et al., Plaintiffs,
v.
State of Alabama, et al., Defendants.
No. CIV.A.94-T-356-N.
United States District Court, M.D. Alabama, Northern Division.
July 9, 2001.
*1324 *1325 *1326 Joseph Hiram Calvin, III, Amelia Haines Griffith, Ann K. Wiggins, Henry Wallace Blizzard, III, Kell Ascher Simon, Robert F. Childs, Jr., Robert L. Wiggins, Jr., Rocco Calamusa, Jr., Russell Wayne Adams, Susan Gale Donahue, Gregory O'Dell Wiggins, Richard Joe Ebbinghouse, Wiggins Childs Quinn & Pantanzis, PC, Birmington, AL, Byron Renard Perkins, Cochran Firm, Birmingham, AL, Roderick Twain Cooks, Winston Cooks, LLC, Birmingham, AL, for In Re: Employment Discrimination Against the State of Alabama, et al., Plaintiff Crum.
Amy L. Stuedeman, Andrew P. Campbell, Cinda R. York, David M. Loper, Thomas O. Sinclair, Wendy T. Tunstill, Campbell Waller & Poer LLC, Birmingham, AL, William Kenneth Thomas, Cabaniss Johnston Gardner Dumas O'Neal, Birmingham, AL, Mark Thomas Waggoner, Warren Bricken Lightfoot, Jr., Edward Andrew Hosp, David Michael Smith, Maynard, Cooper & Gale, P.C., Birmingham, AL, Christopher W. Weller, Mai Lan Fogal Isler, Constance S. Barker, Henry Clay Barnett, Jr., Capell Howard PC, Birmingham, AL, Frank Decalve Marsh, Assistant General Counsel, Alabama Department of Industrial Relations, Birmingham, AL, Henry Lewis Gillis, John J. Park, Jr., Margaret L. Fleming, William H. Pryor, Jr., Billington Malone Garrett, Office of Attorney General, Birmingham, AL, Robert Jackson Russell, Sr., Department of Agriculture & Industries, Birmingham, AL, Robert M. Weinberg, ACLU of Alabama, *1327 Robert Stephen Morrow, Morrow, Romine & Pearson, P.C., Montgomery, AL, David Johnson Dean, Alabama Department of Conservation and Natural Resources, Birmingham, AL, James H. Evans, David R. Boyd, Balch & Bingham, Montgomery, AL, Juliana Faria Teixeira Dean, Michael R. White, Reginald Lee Sorrells, Alabama Dept. of Education, Montgomery, AL, Kim Tobias Thomas, Alabama Dept. of Corrections, Legal Division, Montgomery, AL, Willie Julius Huntley, Jr., Huntley Firm PC, Ben A. Fuller, Stephen M. Langham, P.C., Prattville, AL, for Defendant State of Alabama, et al.
A. Michelle Clemon, Maynard, Cooper & Gale, P.C., Birmingham, AL, for Defendant Alabama Department of Corrections.
Alice Ann Byrne, State Personnel Department, Montgomery, AL, for Defendant State of Alabama Personnel Board and Department.
Christopher Trolson Terrell, Balch & Bingham, Birmingham, AL, Edward Smith Allen, Balch & Bingham, Birmingham, AL, John James Coleman, III, Burr & Forman LLP, Birmingham, AL. Robin Garrett Laurie, Balch & Bingham, Montgomery, AL, for Intervenor Defendant Department of Industrial Relations
Edward Earl Davis, Alabama Department of Economic and Community Affairs, Montgomery, AL, for Intervenor Defendant Alabama Department of Economic and Community Affairs.
Gwendolyn Bulger Garner, John J. Breckenridge, Ronald James Bowden, Alabama Department of Revenue, Legal Division, Montgomery, AL.
Ashley H. Hamlett, Gregory J. Robinson, John Richard Wible, Alabama Department of Public Health, Montgomery, AL, for Dept. of Public Health.
Sharon E. Ficquette, Alabama Department of Human Resources, Legal Office, Montgomery, AL, for Dept. of Human Resources.
Courtney Wayne Tarver, Department of Mental Health & Mental Retardation, Bureau of Legal Services, Montgomery, AL, for Dept. of Mental Health.
William O. Butler, III, Alabama Medicaid Agency, Montgomery, AL, for Ala. Medicaid Agency.
Robert Douglas Tambling, Office of Atty. Gen., Montgomery, AL, for Ala. Bd. of Public Accounting.
Angela C. Turner, Louisville, KY, for Intervenor Defendant Alabama Labor Board.
Lee David Winston, Winston Cooks, LLC, Birmingham, AL, for Cross Defendant Paulette Williams, Director of the State Emergency Management Agency Movant, Maggie L. Gresham.
Patrick Christopher Davidson, Adams Umbach Davidson & White LLP, Opelika, AL, for Movant Alabama Department of Public Safety.
James William Davis, State of Alabama, Office of the Attorney General, Montgomery, AL, for Movant Martin Gutmann.
Charles Mark Bain, Melton Espy & Williams, PC, Montgomery, AL, for Movant Alabama State Employees Association.
Alan H. Garber, Kimberly C. Page, Wiggins Childs Quinn & Pantanzis, PC, Birmingham, AL, for Movant Carrie Warren.

ORDER
MYRON H. THOMPSON, District Judge.
Pending before the court is defendants' motion to disqualify plaintiffs' counsel Robert L. Wiggins, Jr. and his law firm, Gordon, Silberman, Wiggins & Childs (GSWC). Defendants claim that Wiggins *1328 violated Rules 4.2, 1.6 through 1.9, and 1.16 of the Alabama Rules of Professional Conduct and the American Bar Association Model Rules of Professional Conduct, when he made ex parte contact with two employees of the State of Alabama. Defendants also claim that, if Wiggins is disqualified, his law firm should also be disqualified under Rule 1.10. The "parties have submitted evidence and briefs to the court, and, although given the opportunity, they all declined an evidentiary hearing and oral argument.[1] For the reasons set forth below, the court denies defendants' motion to disqualify.

I. FACTUAL BACKGROUND
As recently summarized by the Eleventh Circuit Court of Appeals, this case, which is commonly referred to as Crum, results from the following: "On March 24, 1994, [this court] consolidated several race discrimination cases brought by African-Americans against the State of Alabama, and several of its boards, departments, and agencies; they also sued the Governor of Alabama and other state officials in both their individual and official capacities. Some of the cases were class actions in which plaintiffs sued on behalf of themselves and all other black persons who are employed, have been employed, or who may in the future be employed by the defendants. Plaintiffs claim[ ], inter alia, discrimination against African-Americans in layoffs, recalls from layoffs, terminations, discipline, hiring, rehiring, evaluations, compensation, transfers, job duty assignments, recruitment, screening, selection procedures, denial of promotions, demotions, rollbacks, sick leave, subjective decision-making practices, and other terms and conditions of employment which have resulted in disparate impact and treatment of the plaintiff[s] and the plaintiff class." In re Employment Discrimination Litigation Against the State of Alabama: Crum v. Alabama, 198 F.3d 1305, 1308-1309 (11th Cir.1999). Plaintiffs seek declaratory and equitable relief under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. §§ 1981a, 2000e through 2000e-17 and 42 U.S.C.A. §§ 1981 and 1983.
Shortly thereafter, in May 1994, on the advice of a local attorney, Martin Gutmann, Assistant Director of the Tuscaloosa County Department of Human Resources, telephoned Wiggins to set up an appointment to discuss problems he was experiencing at work.[2] Other than generally that he felt he had suffered an improper retaliatory demotion, he did not go into details.
On May 24, Gutmann met with Wiggins. In a conversation which was initially limited to ferreting out any possible conflicts, Gutmann related his concerns: that he had been demoted; that there had been an investigation of internal EEO charges by two African-American employees, Dorothy Carson and Wilson Morgan; that the Tuscaloosa County Department of Human Resources claimed to have demoted Gutmann as result of the EEO investigation; and that Gutmann had neither done nor said anything racially discriminatory. Gutmann further indicated in passing that he *1329 was an employee of both the County Resources Department and the Alabama Department of Human Resources. On learning this last factthat is, the connection between the county and state departments, which Wiggins did not know beforeWiggins immediately terminated the conversation and informed Gutmann that he could not represent him because he already represented the plaintiff class in this case, that is, Crum. Wiggins did not inquire about any of the facts related to the claims of Carson and Morgan.
In the meantime, Carson and Morgan were referred to GSWC; Carson and Morgan sought out the law firm and not vice versa. GSWC filed EEOC charges on behalf of Carson and Morgan.
In addition, Suzanne Clement, a white female, contacted GSWC, seeking help on a claim that the Tuscaloosa County Human Resources Department was retaliating against her for opposing race discrimination against black employees. In November 1995, Mike Quinn, an attorney with GSWC, filed a federal lawsuit in the Northern District of Alabama, Clement v. State of Alabama, civil action no. 95-2802-W (N.D.Ala.), charging that the State of Alabama and others had violated of Title VII, § 1981, and other civil rights statutes. Before Quinn filed the Clement complaint, Wiggins had never heard of Clement.
On May 24, 1996, defendants in this, the Crum, matter filed a motion to disqualify Wiggins claiming that he conducted ex parte interviews of Gutmann and Clement, represented these individuals as clients even though a conflict existed with the interests of the Crum plaintiffs, and breached Gutmann's expectation of confidentiality by subsequently using information conveyed during the screening interview to Gutmann's detriment. Defendants also allege that Clement actively opposed the promotion of Morgan to supervisor of the Family Options Unit of the Tuscaloosa County Human Resources Department, which defendants claimed forms the basis of Morgan's suit against them. Defendants contend that because Wiggins is representing both a party claiming racial discrimination and a party who allegedly committed such discrimination, Wiggins has a conflict of interest and cannot zealously advocate for both parties.
In Clement, defendants, including the State of Alabama, also moved to disqualify GSWC on the same grounds asserted in Crum. After receiving evidence, the district judge in Clement found the motion to be not only without merit, but also that the State had violated Rule 11 of the Federal Rules of Civil Procedure, and he imposed Rule 11 sanctions. Clement won her case on the merits, and defendants appealed.
On April 30, 1999, in an unpublished opinion, the Eleventh Circuit affirmed the judgment in Clement's favor and expressly upheld the Rule 11 sanctions that had been imposed against defendants. The appellate court wrote: "Finally, the defendants contend that the district court abused its discretion in refusing to disqualify plaintiff's lawyers and in ordering sanctions for filing the motion to disqualify. We conclude that the defendants failed to show that the district court abused its discretion by denying the defendants['] motion for disqualification and imposing sanctions on the defendants for filing such a motion."

II. COLLATERAL ESTOPPEL
Plaintiffs in Crum argue that this court need not reach defendants' disqualification claims because defendants are collaterally estopped by the Clement proceedings from re-litigating the claims. The collateral estoppel doctrine generally provides that a party is barred from relitigating an issue if the following elements *1330 are present: (1) the issue at stake is identical to the one involved in the prior litigation; (2) the issue has been actually litigated in the prior suit; (3) the determination of the issue in the prior litigation was a critical and necessary part of the judgment in the action; and (4) the party against whom the earlier decision is asserted had a full and fair opportunity to litigate the issue in the earlier proceeding. See Citibank, N.A. v. Data Lease Financial Corp., 904 F.2d 1498, '1501 n. 6 (11th Cir.1990).
At first blush, it would appear that the doctrine soundly applies here. Defendants here are making the same disqualification claims that were determined adversely against them in Clement after a full and fair opportunity to litigate them, even through an appeal. Nevertheless, the court believes that the doctrine should be applied with hesitation here. Whether an attorney should be disqualified depends in large measure on the specific context of the case in which it is raised, and thus circumstances that might not warrant disqualification in one case could warrant disqualification in another. But second, and more importantly, and even though defendants have not made this contention, nonmutual collateral estoppel, which is the type of estoppel asserted here, simply does not apply to the States. See Hercules Carriers v. Florida, 768 F.2d 1558, 1578-1579 (11th Cir.1985); see also United States v. Mendoza, 464 U.S. 154, 104 S.Ct. 568, 78 L.Ed.2d 379 (1984).
This does not mean, however, that the Clement proceedings are without great significance in this case. The legal and factual context in which the disqualification motion was raised and decided in Clement is not materially different from the legal and factual context here; indeed, after its own independent review of the evidence, this court fully agrees with the Clement district judge's factual findings, credibility assessments, and comments on the evidence. Thus, the fact that the Clement district judge found the motion not only meritless but worthy of Rule 11 sanctions and the fact that a panel of the Eleventh Circuit agreed with that district judge on both counts strongly reinforce this court's similar conclusion that disqualification is not warranted here as well.

III. RULES OF PROFESSIONAL CONDUCT

A. Standard of Review
It is "beyond dispute that lawyers are officers of the court and that the courts have the inherent authority to regulate their professional conduct." In re Gopman, 531 F.2d 262, 266 (5th Cir.1976).[3] Attorneys who practice before the Middle District of Alabama must "adhere to . . . th[e] Court's Local Rules, the Alabama Rules of Professional Conduct, the Alabama Standards for Imposing Lawyer Discipline, and, to the extent not inconsistent with the preceding, the American Bar Association Model Rules of Professional Conduct." M.D. Ala. L.R. 83.1(f).[4] "These local rules represent controlling obligations on attorneys appearing in this court." Green v. Montgomery County, Ala., 784 F.Supp. 841, 842 (M.D.Ala.1992). However, the ethical standards that govern attorneys who practice before a federal court are determined by federal and not *1331 state law. In re Snyder, 472 U.S. 634, 645 n. 6, 105 S.Ct. 2874, 2880 n. 6, 86 L.Ed.2d 504 (1985); see also In re Finkelstein, 901 F.2d 1560, 1564 (11th Cir.1990) ("The state codes of professional responsibility do not by their own terms apply to sanctions in the federal courts and any standards imposed are a matter of federal law."). Therefore, even though the Middle District has adopted the ethical rules promulgated by the Alabama State Bar, the court is not bound by state court interpretations of those rules. See Bell Atlantic Corp. v. Bolger, 2 F.3d 1304, 1316 (3d Cir.1993). Nonetheless, in evaluating the charges against Wiggins, the court must "hold attorneys to recognized standards of professional conduct." Finkelstein, 901 F.2d at 1564.
As this court recently recognized in Nuri v. PRC, Inc., 5 F.Supp.2d 1299, 1302 (M.D.Ala.1998), "[t]he method to be employed by the court for considering a motion to disqualify an attorney based on an alleged violation of the rules governing his conduct is somewhat unclear in light of recent changes to the rules of professional conduct." The court summarized the old standard for as follows:
"In the past, most motions to disqualify were analyzed under a test derived from Canon 9 of the American Bar Association's Model Code of Professional Responsibility, and a similar, if not identical, provision of Alabama's Code of Professional Responsibility. See Norton v. Tallahassee Mem'l Hosp., 689 F.2d 938, 941 (11th Cir.1982); United States v. Hobson, 672 F.2d 825, 828 (11th Cir.1982). This approach drew on the language of Canon 9, which provided that `A lawyer should avoid even the appearance of impropriety.' Norton, 689 F.2d at 941. To persuade the court that it should disqualify an attorney under this standard, the moving party had to show (1) a reasonable possibility that some specifically identifiable impropriety did in fact occur, although there need not be proof of actual wrongdoing, and (2) a likelihood of public suspicion or obloquy that outweighs the social interests which will be served by a lawyer's continued participation in a particular case. Hobson, 672 F.2d at 828. The continued viability of this method of analysis is questionable, however, because the American Bar Association's Model Code was replaced with its Model Rules of Professional Conduct in August 1983, and Alabama's Code was replaced by its Rules of Professional Conduct on January 1, 1991, and neither of these new sets of rules contains language like that of Canon 9."
5 F.Supp.2d at 1302-1303 (footnote omitted). Recognizing that the consideration of a motion to disqualify involves a range of competing interests, this court opted to follow the balancing approach outlined by the Eighth Circuit Court of Appeals in Meat Price Investigators Ass'n v. Spencer Foods, Inc., 572 F.2d 163 (8th Cir.1978), which requires a balancing of the following three competing interests: "(1) the client's interest in being represented by counsel 'of its choice; (2) the opposing party's interest in a trial free from prejudice due to disclosures of confidential information; and (3) the public's interest in the scrupulous administration of justice." Id. at 165.
Included in this balancing is a consideration of other important issues. First, ethical violations come in varying degrees of severity, but disqualification is always a drastic measure, which courts should hesitate to impose except when absolutely necessary. See, e.g., Owen v. Wangerin, 985 F.2d 312, 317 (7th Cir. 1993); Metrahealth Ins. Co. v. Anclote Psychiatric Hosp., 961 F.Supp. 1580, 1582 *1332 (M.D.Fla.1997) ("The disqualification of one's chosen counsel is an extraordinary measure that should be resorted to sparingly."). Second, because of the impact a motion to disqualify has on the party losing her counsel, the moving party is held to a high standard of establishing the basis of the motion, and the need for disqualification. See, e.g., Plant Genetic Sys. v. Ciba Seeds, 933 F.Supp. 514, 517 (N.D.N.C.1996) ("Disqualification is a serious matter which *cannot be based on imagined scenarios of conflict, and the moving party has a high standard of proof to meet in order to prove that counsel should be disqualified."); English Feedlot, Inc. v. Norden Lab., Inc., 833 F.Supp. 1498, 1506 (D.Colo.1993) ("The moving party has the burden of showing sufficient grounds for disqualification. . . . Specific facts must be alleged and `counsel cannot be disqualified on the basis of speculation or conjecture.'"); Tessier v. Plastic Surgery Specialists, Inc., 731 F.Supp. 724, 729 (E.D.Va.1990) ("The Court is also aware that the disqualification of a party's chosen counsel is a serious matter which cannot be based on imagined scenarios of conflict."). Third, other means of addressing a violation short of disqualification are available to the courtlike exclusion of illgotten evidenceand should be used when appropriate. See, e.g., University Patents, Inc. v. Kligman, 737 F.Supp. 325, 329 (E.D.Pa.1990) ("the court is satisfied that the circumstances warrant precluding the defendants from introducing any information obtained through Mr. Morrison's ex parte contacts with persons whose statements could bind the University.").
Finally, because a motion for disqualification is such a "potent weapon" and "can be Misused as a technique of harassment," the court must exercise extreme caution in considering it to be sure it is not being used to harass the attorney sought to be disqualified, or the party he represents. See, e.g., Kitchen v. Aristech Chem., 769 F.Supp. 254, 256-57 (S.D.Ohio 1991); see also Developments in the Law: Conflict of Interest in the Legal Profession, 94 Harv. L. Rev. 1244, 1285 (1981) ("Lawyers have discovered that disqualifying counsel is a successful trial strategy, capable of creating delay, harassment, additional expense, and perhaps even resulting in the withdrawal of a dangerously competent counsel.").
Before adjudicating the merits of the parties' claims, the court must first dispense with Wiggins's contention that defendants lack standing to bring this motion to disqualify based on their claims of breach-of-client confidentiality. Rule 8.3 of the Alabama Rules of Professional Responsibility requires a lawyer to report knowledge of another attorney's violation of the rules to an "authority empowered to investigate such violation." Further, a party which may be compromised by representation in which opposing counsel is engaged has standing to bring a motion to disqualify, regardless of whether the party is a client or former client of the attorney or firm whose representation is at issue. See Davis v. Southern Bell Tele. & Tele. Co., 149 F.R.D. 666, 673 (S.D.Fla.1993). Accordingly, the issue of Wiggins's alleged violation of the ethical rules is properly before the court.

B. Alleged Violations of the Ethical Rules
The court will examine the allegations concerning each of the ethical rules defendants contend Wiggins violated to determine, first, if defendants have met their burden in showing that the rules were violated, and, second, if, in fact, the rules were violated, the severity of the degree of violation.

*1333 i. Rule 4.2
Defendants assert that Wiggins violated Rule 4.2 by conducting ex parte interviews with managerial employees of an adverse party, specifically Gutmann and Clement. Rule 4.2 of the Alabama Rules of Conduct provides: "a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the Jawyer has the consent of the other lawyer or is authorized by law to do so."
The comments to Rule 4.2 indicate that the rule prohibits an attorney from communicating with the employee of an adverse party if (1) the employee exercises managerial responsibility on behalf of the organizational employer, (2) the employee's act or omission may impute civil or criminal liability to the employer, or (3) the employee's statement would constitute an admission by the employer. Because both Gutmann and Clement were supervisory employees of the Tuscaloosa office of the Department of Human Resources, Rule 4.2 would seem to prohibit Wiggins from interviewing them, in their capacities as managerial employees, without the consent of their employer's counsel.
However, the comments also indicate two exceptions to Rule 4.2 implicated in the allegations against Wiggins. First, "[c]ommunications authorized by law include the right of a party to a controversy with a government agency to speak with government officials about the matter." Wiggins contends that Rule 4.2 does not apply when the party seeks to speak to a government official about a controversy with the government. He cites Camden v. State of Maryland, 910 F.Supp. 1115, 1119 n. 8 (D.Md.1996), for the following proposition: "Insofar as a party's right to speak with government officials about a controversy is concerned, Rule 4.2 has been uniformly interpreted to be inapplicable." (Citing Geoffrey C. Hazard, Jr. and W. William Hodes, The Law of Lawyering § 4.2:109 (2d ed. Supps. 1991 & 1994)). In the 1997 supplement to their treatise, however, Hazard and Hodes acknowledge that communication with government official is proper, but a requirement that the counsel for the government be notified of the contact "appears to be a reasonable compromise" between both parties' interests. Id. (1997 Supp.) (citing Association of Bar of City of New York, Opinion 1988-8, 4 Law. Man. Prof. Conduct 300 (1988)).
In response to Wiggins's argument, defendants cite to Frey v. Dep't of Health and Human Servs., 106 F.R.D. 32 (E.D.N.Y.1985). Defendants state that Frey stands for the proposition that "the `authorized by law' exception in Rule 4.2 does not permit counsel to communicate with a managerial government employee."[5] However, defendants have misstated the holding in this case. First, prior to the court's opinion, the plaintiff in Frey agreed not to contact certain employees, particularly those employees involved in the decision making process of her employment. Thus, the only issue the Frey court reached was whether or not the plaintiff could contact other employees in the government agency. 106 F.R.D. at 35-36. Noting the "dearth of authority on this specific issue," the Frey court held that "the proposed questioning sought by plaintiff which will aid in the search for truth is paramount and outweighs any burden or danger to the defendant." Id. The court concluded that the plaintiff could question all levels of employees at the government agency, including high level managerial employees, with the exception of those parties the plaintiff's counsel had agreed *1334 would not be contacted ex parte. Id. (permitting the plaintiff to interview all employees, including those at the GS 12-15 levels). The Frey court noted the importance of informal discovery procedures in a Title VII case against a government entity:
"In enacting the statutory scheme of Title VII which embodies the strong national policy against employment discrimination, Congress could not have intended to disadvantage plaintiffs in preparation of their cases. The [government agency] is a vast machinery encompassing many organizational departments and thousands of employees. In this case it is essential to plaintiff's ability to fully prepare and present her case that [the agency's] employees who are potential witnesses be informally contacted so that she may ascertain whether their testimony may be helpful to her case. . . . "
"Further, to permit the [agency] to barricade huge numbers of potential witnesses from interviews except through costly discovery procedures, may well frustrate the right of an individual plaintiff with limited resources to a fair trial and deter other litigants from pursuing their remedies."
Id. at 36. Because the court finds the case at bar to center around the second exception to Rule 4.2, discussed below, the court need not reach the issue of whether the "authority of law" exception permits a party carte blanche ex parte contact with government employees.
Notwithstanding the government exception to Rule 4.2, a second exception indicates that the rule "does not prohibit communication with . . . an employee or agent of a party, concerning matters outside the representation." Comment to Rule 4.2. It follows that when a managerial employee of an adverse party, or any other individual, approaches an attorney for legal advice in a matter, the attorney does not know the substance of the matter until after he conducts some type of initial consultation or screening interview to learn the details of the potential client's legal needs. A rule that prohibits an attorney from conducting a screening interview could result in the loss of prospective clients merely because of their status as managerial employees of an adverse party, even though the individuals' legal needs have no relationship to the matter in which the employer is an adverse party. Moreover, the purpose of Rule 4.2 is to prevent attorneys from seeking interviews with an unknowing lay person in order to obtain admissions against interest. Hazard and Hodes, The Law of Lawyering 4.2:101. As long as the attorney conducting the screening or interview does not take advantage of the potential client's knowledge or information concerning the dispute, there is no violation of Rule 4.2. The court must therefore consider the specific factual allegations made by defendants to determine whether Wiggins's contacts with Gutmann and Clement violated Rule 4.2.

a. Martin Gutmann
The court first notes that Wiggins's interview with Gutmann was nothing more than a screening meeting; it was not intended to be, and was not, an interview of an adverse party. Gutmann called Wiggins about representing him in a possible racial discrimination case suit against him. After that initial phone call, Wiggins scheduled an interview or initial consultation to discuss the possibility of representation in detail. Nothing but generalities were exchanged, and nothing Wiggins learned was not already of general knowledge and nothing he learned gave him any advantage in either Clement or Crum. Upon learning of a possible conflict, Wiggins immediately called the screening interview *1335 to an end.[6] Therefore, the interview of Gutmann as a prospective client did not violate Rule 4.2. Furthermore, Wiggins could not reasonably have known whether Gutmann sought representation in the same matter as Crum or a related matter until after he had conducted some type of screening. To rule otherwise, would require an attorney to turn clients away based on their employment status and not the substance of their claims.

b. Suzanne Clement
Because the subject matter of Clement's need for representation appears to overlap with the matter in which defendants' counsel represents her as a managerial employee of defendants, defendants argue that Wiggins violated Rule 4.2. First, it appears that Clement, as a supervisory employee, falls within the scope of Rule 4.2 because she would be deemed to be represented by employer's counsel on matters concerning her capacity as a managerial employee of defendants. Second, Clement sought legal advice on a matter substantially related to the Crum plaintiffs' allegations against the Department of Human Resources.
However, it is apparent that Clement has taken a position contrary to her employer's in this litigation. Clement claims that the Department of Human Resources and other defendants retaliated against her for her opposition to discriminatory employment practices. Accordingly, Clement's interests "could not be represented by Defendant's counsel [because] the[y] are in conflict [with the Defendant's interests]." Browning v. AT&T Paradyne, 838 F.Supp. 1564, 1567 (M.D.Fla. 1993) (finding no violation of Rule 4.2. where former supervisory employee joined in age discrimination suit against employer); In re Prudential Ins. Co., 911 F.Supp. 148, 154 (M.D.Pa.1995) ("where a former employee has become a party adverse to his former corporation, the rules governing ex parte contacts with `represented' parties do not apply to restrict that employee's contacts with other parties adverse to the corporation."). The court therefore concludes that Wiggins did not violate Rule 4.2 in his contact with Clement.

ii. Rule 1.6
Rule 1.6 states that a lawyer "shall not reveal information relating to representation of a client unless the client consents after consultation." In order to determine whether Wiggins breached client confidentiality, or has an inherent conflict of interest in the representation of his clients, the court must first determine whether an attorney-client relationship was created between Wiggins and Gutmann.
The preamble to the Alabama Rules of Professional Responsibility provides guidance on the question of when an attorney-client relationship is established. "Whether a client-lawyer relationship exists for a specific purpose can depend on the circumstances and may be a question of fact." Scope, ¶ 3. Most of the duties related to this relationship arise "only after the client has requested the lawyer to render legal services and the lawyer has agreed to do so." Id. Because Wiggins did not agree to perform legal services for Gutmann, their contact at the initial interview did not rise to the level of an attorney-client relationship. However, the preamble to the Rules also states that "there are some duties, such as that of confidentiality under Rule 1.6, that may attach when a lawyer agrees to consider *1336 whether a client-lawyer relationship shall be established."
This court has previously recognized that an attorney-client relationship can be created through an initial interview: "The fiduciary relationship existing between lawyer and client extends to preliminary consultation by a prospective client with a view to retention of the lawyer, although actual employment does not result." Green v. Montgomery County, Ala., 784 F.Supp. 841, 845 (M.D.Ala.1992) (quoting Westinghouse Elec. Corp. v. Kerr-McGee Corp., 580 F.2d 1311, 1319 (7th Cir.), cert. denied, 439 U.S. 955, 99 S.Ct. 353, 58 L.Ed.2d 346 (1978)). The existence of the attorney-client relationship "hinges upon the client's belief that he is consulting a lawyer in that capacity and his manifested intention is to seek professional legal advice." Id. at 845-46. This court also noted, however, that the subjective belief must be a reasonable one: "if . . . the attorney has made it clear to the would-be client that there is no attorneyclient relationship and if the evidence further reflects that the would-be client should have known that the relationship had not advanced to the point at which it could be deemed a representation, then there would be no attorney-client relationship despite the would-be client's subjective belief." Id. at 846.
Defendants have taken great pains to convince the court that Green dictates the disqualification of Wiggins in the case at bar. Defendants have overstated their case. It is therefore necessary, before turning to the merits of defendants' argument, to distinguish the facts involved in Green. First, the plaintiff in Green was a former client of the attorney he sought to have disqualified before he contacted the attorney to solicit his advice in the case being litigated. Second, the attorney in Green did not disclose his representation of an adverse party after his former client had disclosed confidential information regarding the facts underlying the litigation. Third, after receiving the information and failing to disclose his representation of the adverse party, the attorney in Green offered the plaintiff legal advice that "the case did not appear to be worth filing." Id. at 844-45. Based on these facts, and the specific fact that a prior confidential relationship existed between the attorney and the plaintiff, this court found that the plaintiff in Green had a "`reasonable expectation' at the time of the telephone conversation that [the attorney] would keep his disclosures confidential." Id. at 847. This court therefore concluded that a confidential fiduciary relationship existed between the plaintiff and the attorney, which disqualified the attorney from the case.
Moreover, this court in Green emphasized that, even if a confidential fiduciary relationship was created, disqualification does not necessarily follow. The American Bar Association has opined that "If the lawyer takes adequate measures to limit the information initially imparted by the would-be client, in most situations the lawyer may continue to represent or to undertake representation of another client in the same or related matter." ABA Comm. on Ethics and Professional Responsibility, Formal Op. No. 90-358 (Sept. 13, 1990). The American Bar Association also notes, however, that "when the information imparted by the would-be client is critical to the representation of an existing or new client in the same or related matter, however, the lawyer must withdraw or decline the representation unless a waiver of confidentiality has been obtained from the would-be client." Id.
Here, Wiggins did not receive any confidential information whatsoever from Gutmann. Furthermore, his subsequent representation *1337 of Morgan and Carson arose in the normal course of representing the class. in Crum; it was not in any way connected to his screening interview with Gutmann. Finally, the names of Carson and Morgan as well as their EEOC charges were matters of public record, and as such were "generally known" within the scope of Rule 1.9. The court therefore finds that Wiggins did not breach Rule 1.6.

iii. Rules 1.7, 1.8, 1.9, and 1.16
Defendants also assert that Wiggins violated the following ethical rules relating to a lawyer's responsibilities when deciding whether to establish an attorney-client relationship in light of conflicts of interests: Rule 1.7[7] 1.8,[8] 1.9,[9] and 1.16.[10]
In order to prove a conflict of interest under the ethical rules, the party seeking disqualification must prove (1) the existence of an attorney-client relationship and (2) that matters within the pending suit are substantially related to the matters within the attorney's previous representation. See Cox v. American Cast Iron Pipe Co., 847 F.2d 725, 728 (11th Cir.1988) (emphasis in original).[11] Once the movant *1338 has provided proof of these two facts, most courts have held that the presumption of imputed knowledge, creating the conflict of interest, is irrebuttable. See, e.g., In re Corrugated Container Antitrust Litigation, 659 F.2d 1341, 1347 (5th Cir.1981) (examining a law firm's close relationship with a corporate client the court concluded that the "single-imputation rule cannot be rebutted."). However, in certain cases, courts will examine both the circumstances leading to the potential conflict and the type of information the attorney had access to in the prior representation. See, e.g., Murray Ohio Mfg. Co. v. AB Electrolux, Fed. Sec. L. Rep. ¶ 93776, 1988 WL 106865 (M.D.Tenn. May 23, 1988), aff'd, 852 F.2d 1288 (6th Cir.1988). Precedent in the Eleventh Circuit suggests that an examination of facts outside of the two-prong test is appropriate in some circumstances in order to determine whether a conflict exists. See Cox, 847 F.2d at 728-29 (stating that the party seeking disqualification waived the benefits of the attorney-client relationship by failing to timely object and noting that the two-pronged test "recognizes that many times there exists no genuine threat that any confidences of the former client would be disclosed to its adversary.").
In analyzing the potential conflicts of interest in this case, the court will limit its discussion to the conflicts involved in Wiggins's screening interview with Gutmann and current representation of the Crum plaintiffs, and Wiggins's representation of Clement and the Crum plaintiffs.

a. Martin Gutmann
To be sure, Wiggins had a temporary fiduciary relationship with Gutmann of the type that arises out of all screening interviews; Wiggins did not form an attorney-client relationship with Gutmann, however. But, as stated, no confidential information was disclosed. Moreover, the information Gutmann disclosed to Wiggins appears to exonerate, rather than, implicate him in the Crum proceedings. Gutmann told Wiggins that he did not believe he had engaged in racially discriminatory practices and that the number of black employees in his area of supervision had increased under his tenure. The court therefore finds that Wiggins's continued representation of the Crum plaintiffs would not violate Rule 1.8 (prohibiting a lawyer from using information relating to the representation of a client to the disadvantage of the client).
In terms of the remaining rules regarding a conflict of interest, the court finds defendants' claims lack merit. It would be somewhat perverse for the court to find that Wiggins's conversation with Gutmann, in which he declined to represent Gutmman for conflict-of-interest reasons, created an additional conflict of interest sufficient to thwart his representation of the Crum plaintiffs. The conflict of interest existed prior to the Gutmann-Wiggins meeting and was not created by the fact of their meeting. The information disclosed to Wiggins by Gutmann only supports this conclusion. Had Gutmann disclosed to Wiggins that he had engaged in racially discriminatory practices at the Tuscaloosa County Human Resources Department, the court would be faced with a different, and more challenging, question regarding Wiggins's conflict. The court therefore concludes that no conflict of interest exists between Wiggins's representation of the Crum plaintiffs and the temporary, fiduciary relationship created by *1339 the Wiggins-Gutmann initial screening consultation.

b. Suzanne Clement
Defendants claim that Wiggins's contact with and representation of Clement also violated the ethical Rules governing conflicts of interest. Rule 1.7(a) prohibits an attorney from representing a client if the client's interests are directly adverse to interest of an existing client of the lawyers:[12] However, if the attorney reasonably believes that the representation of the new client will not adversely affect the relationship with the current client, and both clients consent to representation of consultation, then the rules permit the attorney to represent both clients. Rule 1.7(a)(1) and (2). The second part of Rule 1.7 prohibits a lawyer from representing a client if that representation "may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests" unless the lawyer reasonably believes that the representation will not be adversely affected and the clients consent. Rule 1.7(b). Wiggins has not provided any evidence to the court that the Crum plaintiffs or Clement consented to his concurrent representation of them. Even if Wiggins had offered such proof to the court, the court's inquiry would not end there. An attorney cannot remedy a conflict of interest merely by obtaining client consent. See ABA Formal Op. 97-406 (April 19, 1997). The court must therefore determine whether the representation of the Crum plaintiffs will be adversely affected by Wiggins's representation of Clement.
Defendants have argued that Wiggins cannot represent the interests of both the Crum plaintiffs and Clement because Clement was one of the supervisors at the Tuscaloosa County Human Resources Department who allegedly discriminated against Wilson Morgan. However, defendants have not provided any evidence that Clement's opposition to Morgan's promotion was based on racial discrimination. Indeed, in their arguments to this court, defendants admit that they do not know Clement's real motives for opposing Morgan's promotion. The court is therefore not convinced that the interests of the Crum plaintiffs and Clement are as diametrically opposed as defendants have argued. Moreover, even if Clement's motives for opposing Morgan's promotion were race-based, that she engaged in such discrimination clearly did not hurt her claim of retaliation in her case.

C. Balancing the Interests
Having analyzed defendants' allegations of improper conduct and reaching the conclusion that there is no evidence that Wiggins did not completely comply with the ethical rules, the court concludes that Wiggins and his law firm, GSWC, should not be disqualified.

IV. CONCLUSION
Accordingly, it is ORDERED that defendants' motion to disqualify, etc., filed May 24, 1996 (doc. no. 261), is denied.
NOTES
[1] See order of July 2, 2001 (doc. no. 463), confirming that parties declined oral argument and an evidentiary hearing.
[2] The court has culled these facts from the evidentiary submissions of the parties, and, where necessary, has resolved factual disputes. The court fully agrees with the factual findings and comments on the evidence by the United States District Court in Northern District of Alabama, which, as will be explained later, addressed essentially the same disqualification issue in the case of Clement v. State of Alabama, civil action no. 95-C-2802-W (N.D.Ala.).
[3] In Bonner v. City of Prichard, 661 F.2d 1206 (1.1th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.
[4] The Local Rules of the Middle District of Alabama are available in Westlaw's on-line databases. They can be located by using West's "find" command to locate "al order 97-15," or by searching in the "al-rules" database.
[5] Defendants' memorandum in reply, filed April 7, 1997 (Doc. no. 289), at 19.
[6] There appears to be some dispute as to whether Wiggins made further inquiry of Gutmann after learning of the possible conflict.

This court agrees with the Clement court on this issue and does not credit Gutmann.
[7] Rule 1.7 (Conflict of Interest General Rule)

"(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to the another client, unless:
(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
(2) each client consents after consultation.
(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
(1) the lawyer reasonably believes that the representation will not be adversely affected; and
(2) the client consents after consultation. . . . [T]he consultation shall included explanation of the implication of the common representation and the advantages and risks involved."
[8] Rule 1.8(b) (Conflict of Interest: Prohibited Transactions)

"A lawyer shall not use information relating to representation of a client to the disadvantage of the client unless the client consents after consultation, except as permitted or required by Rule 1.6 or Rule 3.3."
[9] Rule 1.9 (Conflict of Interest: Former Client)

lawyer who has formerly represented a client in a matter shall not thereafter:
(a) represent another person in the same or a substantially relate matter in which that person's interests are materially adverse to the interest of the former client, unless the former client consents after consultation; or
(b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client or when the information has become generally known."
[10] Rule 1.16 (Declining or Terminating Representation)

"(a) Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client, if:
(1) the representation will result in violation of the Rules of Professional Conduct or other law. . . .
Comment: A lawyer should not accept representation in a matter unless it can be performed competently, promptly, without improper conflict of interest and to completion."
[11] In their supplemental memorandum of law in support, filed September 5, 1997 (Doc. no. 296), defendants repeatedly cite the Eleventh Circuit's recent decision Freund v. Butterworth, 117 F.3d 1543 (11th Cir.1997), for the elements of establishing the existence of a conflict of interest. However, Freund involved a sixth-amendment ineffective-assistance-of-counsel claim based on conflict of interest. 117 F.3d at 1571 (stating the standard for proving a sixth amendment violation: "a habeas petitioner must demonstrate that an `actual conflict of interest adversely affected his lawyer's performance.'"). Moreover, the decision was vacated and reconsidered en banc with a different outcome in Freund v. Butterworth, 165 F.3d 839 (11th Cir.1999).
[12] Rule 1.7 is the relevant standard because Rule 1.9 applies to conflicts of interests with former clients.